TEXTILE APRON COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34175. Promulgated October 30, 1953.

*Lewis R. Morgan, Esq.*, and *Allen Post, Esq.*, for the petitioner.
*James R. Harper, Jr., Esq.*, for the respondent.

OPINION.

Rice, *Judge:* The first issue is whether the petitioner is entitled to use the Lifo method of inventory valuation without having specifically requested and obtained the permission of the respondent, on the theory that such permission had previously been secured by the predecessor proprietorships; and that, because of the tax-free exchange out of which the petitioner was formed, it has a continuing effect. Respondent's contention is that the petitioner is a new taxpaying entity and, as such, must obtain the approval of the Commissioner of Internal Revenue before adopting the Lifo method.[1]

In the statutory scheme, the Congress recognized that the general terms of the Lifo method, as stated in section 22 (d), should be subject to additional qualifications in order that the income of various types of taxpaying entities be accurately reflected under this method and to prevent its use in instances which would be inappropriate. It provided that the taxpayer must make specific application to use this method. Further, it provided in section 22 (d) (3) that:

> The change to, and the use of, such method shall be in accordance with such regulations as the Commissioner, with the approval of the Secretary, may prescribe as necessary in order that the use of such method may clearly reflect income.

The Commissioner was thus given the right to promulgate regulations restricting the use of this method to those taxpayers who supplied

---

[1] SEC. 22. GROSS INCOME.

(d) METHOD USED IN INVENTORYING GOODS.

(1) A taxpayer may use the following method (whether or not such method has been prescribed under subsection (c)) in inventorying goods specified in the application required under paragraph (2):

(A) Inventory them at cost;

(B) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof, and second, those acquired in the taxable year; and

(C) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method.

(2) The method described in paragraph (1) may be used—

(A) Only in inventorying goods (required under subsection (c) to be inventoried) specified in an application to use such method filed at such time and in such manner as the Commissioner may prescribe: * * *

information showing that this method of inventory valuation would be proper under the circumstances of their particular business.

It has been established that the regulations issued by the Commissioner must be upheld unless they are plainly inconsistent with the law itself. *Commissioner* v. *South Texas Co.*, 333 U. S. 496 (1948), rehearing denied 334 U. S. 813 (1948). Congress has thus delegated broad discretion to the Commissioner to control the adoption and use of this method by the promulgation of restrictive regulations, and we are unable to say that they are in conflict with the statute.

The petitioner has failed to conform to the requirements of the statute and regulations, and it is, therefore, not entitled to use the Lifo method of inventory valuation. It filed no application and it cannot rely on that filed by its predecessor. The regulations require [2] that an application be filed by "the taxpayer." When organized and incorporated on December 19, 1945, petitioner became a new taxpayer, entirely separate and distinct from the proprietorships whose assets it subsequently acquired. It was, therefore, required to file an application of its own if it wished to use the Lifo method. It would not be reasonable to attribute a meaning to the word "taxpayer" which would encompass a predecessor composed of individual proprietorships and also a successor corporation.

Our holding on this issue also disposes of petitioner's alternative argument that section 22 (d) (5) (A)[3] compelled it to use the same system of inventory valuation employed by the proprietorships. This paragraph requires that a taxpayer, once having used the Lifo method of inventory valuation, must continue its use in subsequent years. This paragraph would have barred the proprietorships from changing their method of inventory valuation without the consent of the Commissioner, but it could in no way affect the choice of inventory method by the petitioner, an entirely new and separate taxpayer. Further, although petitioner continued the business of the predecessor proprietorships, it was not compelled to employ the same accounting methods. Section 29.22(d)–3 of the regulations provides that a taxpayer must file, if he is a manufacturer, in addition to a statement of intent to use the Lifo method, "an analysis of all inventories"

---

[2] Regulations 111, sec. 29.22(d)–2. REQUIREMENTS INCIDENT TO ADOPTION AND USE OF ELECTIVE METHOD.—The adoption and use of the elective inventory method is, * * * made subject to the following requirements:

(1) The taxpayer shall file an application to use such method specifying with particularity the goods to which it is to be applied; * * *

[3] SEC. 22. GROSS INCOME.

(d) METHOD USED IN INVENTORYING GOODS.

(5) If a taxpayer, having complied with paragraph (2), uses the method described in paragraph (1) for any taxable year, then such method shall be used in all subsequent taxable years unless—

(A) With the approval of the Commissioner a change to a different method is authorized * * *

showing "in detail the manner in which costs are computed with respect to raw materials, goods in process, and finished goods * * *." The Commissioner can then decide whether the use of the Lifo method is appropriate, taking into consideration the particular accounting methods employed by the manufacturer in the computation of costs. Since the petitioner was under no obligation to use the same method of computing costs as that employed by its predecessors, it is obvious that permission granted to its predecessors on the basis of stated methods of cost computation should not extend to the petitioner, who was free to employ an entirely different method of cost computation.

The petitioner argues that since it was required, as a transferee in a 112 (b) (5) tax-free exchange, to record its opening inventory in 1946 at the transferor's basis,[4] it was also required to use the transferor's method of valuing inventories. This is clearly not the case. The transferor's method of computing inventory valuation had no continuing effect on the petitioner. It merely served as a means of determining the basis of the transferred assets.[5] Section 113 (a) (8) of the Internal Revenue Code requires that the assets received by the transferee retain the basis which they had in the hands of the transferor in order to prevent income from escaping taxation. Section 112 (b) (5) exempts any increase in value of the transferred assets from taxation at the time of the transfer, but this is merely a postponement and not a forgiveness. When the transferee sells these assets, such appreciation in value is taxed by requiring that the transferee use the transferor's basis in computing the gain. The transfer to petitioner on January 2, 1946, took place during a period of rising prices. The inventory transferred to the petitioner by the proprietorships appeared on their books at considerably less than its replacement cost, since it was calculated according to the Lifo method. This was the result of the assumption on which Lifo is based, namely, that the merchandise purchased last during the year is the first to be sold. Petitioner thus acquired an inventory with a basis substantially less than its then current market value. Having failed to make application for the use of Lifo, petitioner should have computed its inventories according to the Fifo method in 1946. Therefore, the merchandise first to be sold was that acquired in inventory from the transferor. Since the petitioner was required to use the transferor's basis in arriving at his gain from the sale of this inventory, his income

---

[4] Section 113 (a) (8) ; *Grain King Manufacturing Co.*, 14 B. T. A. 793 (1928), dismissed 47 F. 2d 608 (C. A. 2, 1931).

[5] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

(1) INVENTORY VALUE.—If the property should have been included in the last inventory, the basis shall be the last inventory value thereof.

for 1946 should have been increased by the difference between the Lifo valuation and the Fifo valuation at the date of the transfer.

Petitioner's citations of *Boyne City Lumber Co.*, 7 B. T. A. 36 (1927), and *The Buss Co.*, 2 B. T. A. 266 (1925), holding that the valuation of opening and closing inventories must be computed uniformly, are not in point. They refer to situations where the taxpayer has acquired its inventory by purchase in the ordinary course of business, whereas petitioner acquired its inventory by means of a tax-free exchange. Petitioner has no option in determining the value of its initial opening inventory under section 22 (c) or (d). That value is fixed by section 113 (a) (8) which requires that it employ the transferor's basis.

This brings us to the second issue: Whether the respondent, having failed to require the use of Fifo in determining petitioner's income for 1946, and now barred by the statute of limitation from doing so in that year's return, may make a compensatory adjustment in petitioner's income for 1947. Thus, the respondent would require the petitioner to use, for the year 1947, an opening inventory calculated on the Lifo method and a closing inventory calculated on the Fifo method.

The respondent relies, in his brief, on *William Hardy, Inc.* v. *Commissioner*, 82 F. 2d 249 (C. A. 2, 1936). This case held that in requiring a change from the cash to accrual method of accounting, the Commissioner may make a "retroactive" adjustment by adding to the taxpayer's income for the year of change the amount of its opening inventory. This was to prevent the value of that inventory, which had "escaped taxation" in previous years, from escaping taxation in the year of change.

However, since the submission of the parties' briefs, this case has been overruled. *Commissioner* v. *Dwyer*, 203 F. 2d 522 (C. A. 2, 1953). That court has now brought its treatment of tax adjustments resulting from a change in accounting method into accord with its own prior opinions,[6] and those of other circuits,[7] in holding that the Commissioner is barred by the statute of limitation from making compensatory adjustments after the prescribed period has terminated. The court, in *Commissioner* v. *Dwyer*, *supra*, stated, p. 524:

Although there have been exceptions, it is established by the great weight of authority that, if a taxpayer has not misrepresented or suppressed the facts, the statute of limitations not only prevents any reassessment of the tax after the prescribed period has passed; but that the Treasury may not assess a tax for a later year to make up for a credit erroneously allowed, or a charge erroneously omitted, in an earlier year. * * *

---

[6] *Bigelow* v. *Bowers*, 68 F. 2d 839 (C. A. 2, 1934) ; *Bennet* v. *Helvering*, 137 F. 2d 537 (C. A. 2, 1943).

[7] *Commissioner* v. *Saltonstall*, 124 F. 2d 110 (C. A. 1, 1941) ; *Commissioner* v. *Mellon*, 184 F. 2d 157 (C. A. 3, 1950) ; *Northwestern States Portland Cement Co.* v. *Huston*, 126 F. 2d 196 (C. A. 8, 1942).

The respondent was given due notice that the petitioner was using the Lifo method of inventory valuation in 1946 since the petitioner stated so on the face of its income tax return. The respondent should have required that the necessary adjustment be made in the 1946 return. Having failed to do so, he cannot now rectify his previous error by distorting the petitioner's 1947 income.

Approaching this compensatory inventory adjustment from an arithmetical standpoint, we find that it must almost certainly result in inequity to either the taxpayer or the Commissioner. The amount which has escaped taxation here is the difference between the low Lifo valuation and the higher Fifo valuation of the inventory at the time it was transferred to the petitioner. It is most improbable that petitioner's inventories in a later year would be exactly the same value as its 1946 inventories, either on a Lifo or Fifo basis. Ordinary changes in business activity will affect the amount of inventory being carried. Therefore, the amount which would be added to petitioner's income by making this adjustment in a subsequent year would bear little relation to the amount which should have been taxed in 1946.

Petitioner may be required to use the Fifo method of inventory computation, but this shall apply uniformly to both its opening and its closing inventories.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: This petitioner, successor in a nontaxable exchange to three other businesses all entitled and permitted to use Lifo and itself fully qualified to use Lifo, continued the use of Lifo in carrying on the same business. It used the Lifo method during 1946, its first year, with the knowledge of and without the objection of the Commissioner, but is denied the right to use Lifo in 1947 and is required to make adjustments to another system for that year, adjustments which cannot do exact justice. The denial is solely upon the technicality that the petitioner, upon succeeding to the business in 1946, failed to apply for permission to use Lifo, as had its predecessors. Such a strict application of a reasonable regulation is unreasonable, arbitrary, bureaucratic, and accomplishes no sensible purpose, but merely serves to cause inconvenience and expense to the taxpayer. A proper sensible result is more desirable than a literal application of a law or regulation. Cf. *Church of the Holy Trinity* v. *United States*, 143 U. S. 457; *Diamond A Cattle Co.*, 21 T. C. 1. I think the Tax Court should not approve such narrow action by the Commissioner but should allow the petitioner to continue the use of Lifo and should regard it, if necessary, as having obtained the permission.

VAN FOSSAN, *J.*, agrees with this dissent.