FISCHER INDUSTRIES, INC. AND SUBSIDIARIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 40305-84.          Filed July 17, 1986.

---

*Harlan Pomeroy*, for the petitioners.
*Richard S. Bloom*, for the respondent.

WILLIAMS, *Judge*: The Commissioner determined deficiencies in petitioners' Federal income tax for each of the taxable years 1975 through 1978 and for 1980 and additions to tax for fraud pursuant to section 6653(b)[1] in the following amounts:

| TYE Apr. 30— | Deficiency | Sec. 6653(b) additions to tax[1] |
|---|---|---|
| 1975 | $349,436 | $174,718 |
| 1976 | 174,699 | 87,335 |
| 1977 | 246,311 | 123,156 |
| 1978 | 22,698 | (not applicable) |
| 1980[2] | 177,311 | (not applicable) |

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue in this case, unless otherwise indicated.

[1]Respondent, by amendment to answer, proposed increases in the additions to tax pursuant to sec. 6653(b); the proposed revised additions are as follows: for the taxable year 1975—$442,357; for the taxable year 1976—$385,687; and, for the taxable year 1977—$334,355. Petitioners concede the correctness of the revised additions to tax.

[2]Adjustments were made but no deficiency was determined for the taxable year 1979 as petitioners incurred a consolidated net operating loss for that year; therefore petitioners' taxable year 1979 is not before us. Although we do not have jurisdiction over taxable year 1979, we may consider facts relating to any taxable year that are relevant to the issues to be decided in those taxable years before this Court. *Martz v. Commissioner*, 77 T.C. 749 (1981).

Following concessions by the parties, the sole issue that the Court must decide now is whether Mayfran, Inc., a member of petitioners' consolidated group, elected for 1975 to value its inventory under the last-in, first-out (LIFO) method of inventory accounting.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners' principal place of business at the time the petition was filed was Mayfield Heights, Ohio.

Petitioners are corporations organized under the laws of the State of Ohio. Petitioner Fischer Industries, Inc. (Fischer), owned four subsidiaries during the period 1975 through 1980—petitioners American Monorail, Inc., American Tool, Inc., M.G. Building Co., and Mayfran, Inc. (Mayfran). Mayfran, a manufacturer during the years at issue in this case, owned a foreign subsidiary, Mayfran GmbH. Mayfran was merged with Fischer, the surviving corporation, on January 3, 1979. Fischer filed consolidated Federal income tax returns (Forms 1120) for each of the taxable years ended April 30, 1975 through 1980, on which the income of each of its domestic subsidiaries was included. As a foreign corporation, Mayfran GmbH could not be included in petitioners' consolidated returns. An information return for Mayfran GmbH was filed with petitioners' consolidated returns, however, for each of the years at issue in this case.

[2]Because of our holding, we will reach a second issue involving the effect of a merger of Mayfran, Inc., into its parent on use of the LIFO method for 1979 and later years. A special trial session is scheduled for trial of this issue.

Prior to the taxable year 1975, the value of Mayfran's inventory was calculated on the first-in, first-out (FIFO) method of inventory accounting while Fischer and its other domestic subsidiaries calculated the value of their inventories under the LIFO method. For the taxable year 1975, however, the value of Mayfran's closing inventory was calculated on the LIFO method. Thereafter, Mayfran calculated the value of its inventories under the LIFO method. Mayfran GmbH continued to calculate the value of its inventory on the FIFO method during the years before this Court.

On their consolidated Federal income tax return for the taxable year 1975 (the 1975 return), petitioners reported that both the LIFO and the FIFO methods were used in their inventory accounting. Petitioners did not answer a question on the 1975 return which asked whether there was any substantial change in determining quantities, costs, or valuations of inventories. No Form 970, Application to Use LIFO Inventory Method, was filed with the 1975 return or with the returns filed by petitioners for any of the remaining taxable years at issue in this case until April 16, 1986, shortly after trial, when petitioners filed an amended return for 1975 attaching a properly completed Form 970. Prior to April 16, 1986, the information requested by Form 970 was not provided on or with petitioners' income tax returns for any of the taxable years 1975 through 1980. Petitioners filed returns for each of the taxable years 1976 through 1980 on the indicated dates: 1976—on January 28, 1977; 1977—on January 18, 1978; 1978—on October 16, 1978; 1979—on October 18, 1979; and 1980—on January 19, 1981. On each of these returns, petitioners reported that LIFO was the method of inventory valuation used and that there was no substantial change in determining the quantities, costs, or valuations of inventories from the prior year.

Petitioners' accounting firm conducted an audit of petitioners' records for the taxable year 1975, and pursuant to its normal audit procedures prepared a certified financial statement for that year. The 1975 financial statement noted that Mayfran had changed from the FIFO to the LIFO method of inventory accounting that year. Petitioner provided a copy of the 1975 financial statement to respondent

in 1979, in response to respondent's request during its own audit of petitioners for documentation to support an election by Mayfran to use the LIFO method for the taxable year 1975.[3] The information requested by Form 970 and respondent's regulations was fully set forth in the work papers of petitioners' accountants that were provided to respondent during the course of its audit of Fischer.

## OPINION

Section 472 permits a taxpayer to elect, in accordance with applicable regulations, the LIFO method of inventory accounting. The regulations provide in part that:

(a) The LIFO inventory method may be adopted and used only if the taxpayer files with his income tax return for the taxable year as of the close of which the method is first to be used a statement of his election to use such inventory method. The statement shall be made on Form 970 pursuant to the instructions printed with respect thereto and to the requirements of this section, or in such other manner as may be acceptable to the Commissioner. * * * [Sec. 1.472-3(a), Income Tax Regs.]

The regulation has been changed significantly since we decided *Textile Apron Co. v. Commissioner*, 21 T.C. 147 (1953), when we last considered the effect of a failure to file a Form 970 on making the LIFO election.[4] In *Textile Apron* we held, based on respondent's regulations that, despite the taxpayer's statement on the original return for its first taxable year that it had calculated its inventory by using LIFO valuation, failure to file a Form 970 was fatal to the LIFO election. After *Textile Apron* was decided, the regulation was amended to permit a taxpayer to elect the LIFO method (1) by filing a Form 970 or (2) in such other manner as may be acceptable to the Commissioner. Filing with the return the information that is required to be reported on Form 970 satisfies these regulations.[5] We believe that this

---

[3]Respondent conducted an audit of petitioners for certain taxable years prior to 1975, and in 1979, expanded the audit to include petitioners' taxable year 1975.

[4]Prior to its amendment sec. 1.472-3(a), Income Tax Regs., provided that the LIFO method could be elected by filing a statement of election "in triplicate on Form 970, and pursuant to the instructions printed thereon and to the requirements of this section." The quoted language was deleted from the amended regulation. It was replaced by the last sentence in the paragraph quoted above. All other language in the regulation remained unchanged.

[5]Respondent has adopted the position that a taxpayer's election to use LIFO is acceptable if all of the information required on, or to be filed with, the Form 970 is included with the

change in the regulations reflects, in part, the opinions of this Court and others decided since *Textile Apron* that if a taxpayer substantially complies with the procedures for making an election, the election will be effective. See, e.g., *Columbia Iron & Metal Co. v. Commissioner*, 61 T.C. 5 (1973). Consequently, a mere failure to file a Form 970 is not fatal to Mayfran's electing LIFO. We will no longer follow the stricter rule of *Textile Apron Co. v. Commissioner*.

Petitioners failed not only to file a Form 970, but also to provide the information required by Form 970 with their original 1975 return—the year for which Mayfran first used the LIFO method. Petitioners did, however, correctly employ the LIFO method of accounting on their 1975 return. Respondent does not dispute the correctness of petitioners' methodology or the accuracy of the values employed in so accounting for Mayfran's inventory.

Despite their failure to provide the required information, petitioners contend that Mayfran substantially complied with the required procedure (1) by using the LIFO method correctly on the 1975 return and on returns for each subsequent year, (2) by furnishing to respondent all information, records, and calculations pertaining to Mayfran's change in inventory accounting when requested to do so during respondent's audit of the 1975 return, and (3) by "perfecting" the election by filing on April 16, 1986, Form 970 with an amended return for 1975.[6] Further, petitioners

---

taxpayer's timely filed Federal income tax return for the taxable year as of the close of which LIFO is first to be used. Rev. Proc. 74-2, 1974-1 C.B. 412, 413.

[6]Petitioners allude on brief to having filed the Form 970 at trial. As the transcript plainly shows, the form offered and received into evidence was not for the purpose of petitioners' making their election but for the purpose of petitioners' proof that the information required by the form was easily prepared by petitioners' accountants from the information made available to respondent during the audit of the 1975 return. The Court understood petitioners' position to be that because all necessary information was readily available to respondent and because preparation of the form was so easy, the failure to file it should be viewed as immaterial. Further, the Court thought that petitioners were trying to show that the election had been made not later than when such information was furnished to respondent during the audit. The Court in no way intimated that we were the proper place for petitioners to file their election form or that we could receive the Form 970 in lieu of petitioners' filing the form with the respondent. In any event, as petitioners' sophisticated counsel should be aware, this Court is not an administrative tribunal and cannot receive, on behalf of the United States, a form that should be filed with respondent. *Hosking v. Commissioner*, 62 T.C. 635 (1974), is not to the contrary. An election to use income averaging at trial is appropriate because income averaging determines the proper rate of tax, not the taxpayer's income, is computational only, and for any eligible taxpayer, is a choice that requires ministerial review by respondent. Compare sec. 1.472-3(b), Income Tax Regs.

contend that to "disturb" Mayfran's LIFO inventory accounting employed consistently and correctly for each of the years before the Court would be an "extreme and unwarranted" sanction.

In support of their position that they have substantially complied with the procedures for electing LIFO, petitioners rely heavily on the absence of any time specified by the regulations for making the election. Relying on *Roy H. Park Broadcasting, Inc. v. Commissioner*, 78 T.C. 1093 (1982), petitioners contend that in the absence of a requirement that the election be filed with an *original return*, filing the Form 970 with an amended return fully satisfies the timeliness requirement of section 472. Although petitioners' arguments are well crafted, we are unpersuaded that Mayfran made a timely election for 1975.

In general, substantial compliance with election requirements entails, at a minimum, a clear expression of the taxpayer's intention to elect appearing either on the original return or, if the circumstances necessitating an election arise after the filing of an original return, as soon as practicable on an amended return. *Knight-Ridder Newspapers v. United States*, 743 F.2d 781 (11th Cir. 1984); *Atlantic Veneer Corp. v. Commissioner*, 85 T.C. 1075 (1985). As we said in *Atlantic Veneer Corp. v. Commissioner, supra* at 1082-1083:

> We have examined the cases as to what constitutes a statement of election under various provisions of the Internal Revenue Code and have found that, absent a formal election, a submitted return and its attached schedules must evidence an affirmative intent on taxpayer's part to make the required election and be bound thereby. E.g., *American Air Filter Co. v. Commissioner*, 81 T.C. 709, 720-723 (1983); *Tipps v. Commissioner*, [74 T.C. 458,] 468-471 [(1980)]; *Hewlett-Packard Co. v. Commissioner*, 67 T.C. 736, 747-750 (1977). Failure to manifest such intent has repeatedly resulted in taxpayer's alleged election being rejected. E.g., *Knight-Ridder Newspapers v. United States*, 743 F.2d 781, 793-797 (11th Cir. 1984); *Young v. Commissioner*, 83 T.C. 831, 839-840 (1984); *Estate of Skaggs v. Commissioner*, [75 T.C. 191,] 205-208 [(1980), affd. per curiam 672 F.2d 756 (9th Cir. 1982)]; *Valdes v. Commissioner*, 60 T.C. 910, 913-915 (1973).

*Park Broadcasting* is not to the contrary. The taxpayer in *Park Broadcasting* affirmatively stated its election on an amended return filed as soon as practicable after the election was permitted by a key change in Federal regula-

tions that occurred *after* the taxpayer had filed its original return. Petitioners also rely on *Dougherty v. Commissioner*, 60 T.C. 917 (1973), but *Dougherty* also involved a change in circumstances occurring after the original return had been filed. In this case, no impediment existed to Mayfran's election on petitioners' 1975 return. Indisputably Mayfran intended to use the LIFO method for taxable year 1975, and the record is clear that petitioners could have taken all steps on the 1975 return that were necessary to perfect the election. We look in vain, however, for any clear expression of that intent on the 1975 return.

Petitioners' original 1975 return gave no indication that the value of Mayfran's closing inventory was being computed under the LIFO method. From petitioners' returns filed prior to audit, respondent could not determine (1) that Mayfran used the LIFO method, (2) which LIFO methodology was used, or (3) whether petitioners' calculations correctly employed the LIFO method. Moreover, the face of every indication on the original return was that Mayfran had chosen to retain the FIFO method. Petitioners failed to answer the question asking whether any change in inventory accounting had occurred, and furthermore, stated explicitly that the FIFO method was used to calculate inventory.[7] No change in method can be discerned from petitioners' use of the correct LIFO figures on the 1975 return.

Petitioners rely on *Grynberg v. Commissioner*, 83 T.C. 255 (1984), to support their contention that use of the LIFO figures without more expresses their intent to elect LIFO. The elective choice in *Grynberg*, however, involved applying a limit of either 30 percent or 50 percent of adjusted gross income, and it was, therefore, clear from the face of the original return which limit the taxpayer had chosen and which elective choice the taxpayer had made. Moreover, unlike the election at issue in *Grynberg*, the LIFO election

---

[7]Petitioners attempt to explain the reference in the return to the use of FIFO as an allusion to the inventory accounting of Mayfran GmbH. We think that explanation is creative but not persuasive. As petitioners' accountant testified, the failure to answer the question on the return pertaining to any change in inventory accounting was "a goof," and we think the reference to FIFO is better described the same way.

involves far more than a simple computation.[8] As petitioners' accountant testified, the transition from FIFO to LIFO is complex and requires much work and attention to detail. The LIFO regulations recognize both this complexity and the care with which respondent seeks to review a LIFO election. Further, there is more than one LIFO methodology, and respondent is entitled to know which one the taxpayer is using at the time the inventory figures are reported. See sec. 1.472-8, Income Tax Regs.

The statute itself mandates that respondent have an opportunity for a complete review of petitioners' use of LIFO. Sec. 472(c). Implementing this mandate, the regulations seek to ensure that respondent has notice of the change in inventory methods. Such notice is essential to any decision to audit the change. The notice to respondent contemplated by section 472(c) is not given without having a clear expression of intent to elect LIFO appear on the first return employing the LIFO method.

The correct use of the LIFO method on the return, together with making the financial statements and workpapers available for inspection, without more, does not serve to give respondent notice of the change to LIFO. Furnishing the required information to respondent on audit, as petitioners did, also does not constitute the necessary *clear expression* of intent on the return to use the LIFO method. It does not give respondent a timely opportunity to know of the highly significant change in inventory accounting, which section 472(c) states deserves his attention. Further, the taxpayer, with hindsight and prior to audit, would not be precluded from amending the figures on the original return to reflect Mayfran's FIFO inventory method.

As in *Knight-Ridder Newspapers v. United States, supra,* the significance of the election at issue here reaches far beyond the year in which the election was purportedly made. A LIFO election is "irrevocable" (sec. 1.472-5, Income Tax Regs.), and, at least with respect to the LIFO election, there should be a strong judicial policy favoring a clear expression on the original return of the intent to make the

---

[8]The line of cases involving an election to use the installment method of accounting for gain on certain sales also involves a comparatively simple computational election. E.g., *Reaver v. Commissioner,* 42 T.C. 72 (1964).

election. What the Eleventh Circuit had to say about electing the class-life system of depreciation in *Knight-Ridder Newspapers* is equally applicable here:

A related regulatory goal is that the Commissioner actually know an election has been made. This ultimately serves the policy of minimizing disputes between taxpayers and the Internal Revenue Service. *See* Treas. Reg. § 1.167(a)-12(a)(1). A clear indication of the taxpayer's election to employ the class life system removes any ground for dispute over whether the system applies and what the appropriate useful life should be. * * * [743 F.2d at 795.]

Petitioners correctly point out that to elect LIFO for Federal income tax purposes, their financial statements must employ the LIFO inventory accounting method. Sec. 1.472-2(e), Income Tax Regs. Petitioners did in fact change Mayfran's inventory accounting method for financial statement purposes for their fiscal year ended April 30, 1975, but we cannot view petitioners' financial statements as the clear expression of Mayfran's intent to elect the LIFO method for Federal income tax purposes. There is no reverse conformity rule—a taxpayer's use of LIFO for financial reporting purposes does not mandate the use of LIFO for Federal income tax purposes—petitioners were not bound to use the LIFO method on their tax return because they had employed it in their financial statements.[9]

Petitioners also argue that, by filing their Form 970 with an amended return while the statute of limitations for taxable year 1975 was open, they perfected Mayfran's LIFO election. On brief petitioners describe this filing, made within weeks after trial, as an afterthought. We also believe that such filing was an empty formality and that the filing satisfies none of the reasons for the clear expression standard which we believe applicable to determining whether a LIFO election has been made. Further the filing

---

[9]Of course, the years before the Court were a period of intense inflation. It was not a sensible business practice to use LIFO for financial reporting purposes—thus reducing reported gross income by current (and inflating) costs—while using FIFO for tax purposes— thus reducing income by comparatively smaller historic costs. In other words, in an inflationary economy, using the LIFO method will result in lesser income than using the FIFO method. Thus, by using FIFO for Federal income tax purposes and LIFO for financial reporting purposes, petitioners would be, in effect, reporting higher income to the Internal Revenue Service than to their shareholders. In a deflationary economy, the converse would be true; petitioners would be reporting lesser income to the Internal Revenue Service than to their shareholders.

does not constitute substantial compliance as soon as practicable with the regulations. Compare *Roy H. Park Broadcasting, Inc. v. Commissioner*, 78 T.C. 1093 (1982).

We, therefore, hold that petitioners did not satisfy the requirements of section 472 and the regulations for taxable year 1975 and, consequently, did not elect the LIFO method of inventory accounting for that year.

Petitioners contend in the alternative that they perfected the LIFO election for the taxable year 1979 when they provided respondent with their accountants' work papers during respondent's audit of the taxable year 1975.[10] Since the work papers contained the information required by Form 970, it is argued, a valid election was made at the time such information was provided to respondent. We are unable to agree. First, the information contained in the work papers pertained only to petitioners' taxable year 1975. Second, the 1979 return has no clear expression of intent to elect LIFO commencing with that year. Third, there is no evidence in the record that would support our finding that had petitioners' inventory for the taxable years 1975 through 1978 been calculated under the FIFO method, petitioners would have first elected LIFO for the taxable year 1979. We conclude that no valid LIFO election was made in the years before us.

> *Decision will be entered after the special trial session.*

---

[10]A hearing was held on June 6, 1986, at which the parties presented oral arguments on the issue of petitioners' expression of intent to make an election on their 1975 return, and on the issue of whether a valid election was made for the taxable year 1979.