T.C. Memo. 1998-233


UNITED STATES TAX COURT


JAMES L. AND LETA A. THURMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16537-96.                    Filed June 30, 1998.


<u>James L. Magee</u> and <u>Thomas H. Nelson</u>, for petitioners.

<u>Kay Hill</u>, for respondent.


MEMORANDUM OPINION


RUWE, <u>Judge</u>:  Respondent determined a deficiency of $43,564 in petitioners' 1992 Federal income tax.  The sole issue for decision is whether respondent may employ the doctrine of substantial compliance in order to treat petitioners' S

corporation as having made a valid election under section
1368(e)(3)(A).[1]

## Background

The parties submitted this case fully stipulated pursuant to
Rule 122.  The stipulation of facts is incorporated herein by
this reference.  Petitioners resided in Fairbanks, Alaska, at the
time they filed their petition.

During the taxable year 1992 and previous years, petitioners
owned 90 percent of the shares of issued and outstanding common
stock of Earth Movers of Fairbanks, Inc. (EMFI).  Petitioners'
children owned the remaining 10 percent of the issued and
outstanding common stock.

EMFI was incorporated under the laws of the State of Alaska
in 1974.  EMFI reported its taxes on a fiscal year basis
beginning on November 1 and ending on October 31.  Prior to the
taxable year commencing November 1, 1986, EMFI was actively
engaged in business as a C corporation and was taxable as such
under the internal revenue laws.  EMFI elected to be taxed as an
S corporation under the internal revenue laws for the taxable
year ending October 31, 1987, and years thereafter.

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

As of November 1, 1986, EMFI had C corporation book retained earnings of $3,739,980 related to prior years. On December 27, 1988, at a special meeting of the board of directors, EMFI declared and paid a $3 million cash dividend to its shareholders. EMFI prepared a "Statement of election to treat distributions to shareholders as not made first out of the accumulated adjustments account", and Mr. Thurman signed the statement on December 29, 1988. EMFI also prepared a "Statement of consent of affected shareholders to election by Earth Movers of Fairbanks, Inc. to treat distributions to shareholders as not made first out of the accumulated adjustments account". Each of the shareholders who received a distribution signed the statement on December 29, 1988. EMFI did not file the election statement or the statement of consent with the Internal Revenue Service (IRS). EMFI recorded its C corporation book retained earnings balance at $739,979 as of October 31, 1989.

On their 1988 Federal income tax return, petitioners reported the distributions paid by EMFI in December 1988 as taxable dividend distributions. Petitioners have not filed claims for refund in relation to the dividend distribution made in December 1988 by EMFI.

EMFI made two distributions to its shareholders during the fiscal year ended October 31, 1993. At EMFI's annual meeting of directors held on December 13, 1992, the board resolved to make a

distribution of dividends in the amount of $739,979.25. EMFI prepared a "Statement of election to treat distributions to shareholders as not made first out of the accumulated adjustments account", and Mr. Thurman signed the statement on December 22, 1992. EMFI also prepared a "Statement of consent of affected shareholders to election by Earth Movers of Fairbanks, Inc. to treat distributions to shareholders as not made first out of the accumulated adjustments account." Each of the shareholders who received a distribution signed the statement on December 22, 1992. EMFI did not attach to its Form 1120S for the fiscal year ended October 31, 1993, or file separately with the IRS, the election statement or the statement of consent.

In accordance with the board of directors' resolution, the first distribution was made on December 22, 1992, in the amount of $739,979 and was paid partially by checks totaling $229,394 and partially in promissory notes totaling $510,586. Petitioners' share of the first distribution paid by EMFI on December 22, 1992, totaled $665,981.

The second distribution was paid in the total amount of $2,318,872. A portion of the second distribution was paid by EMFI to the shareholders on December 22, 1992. Petitioners' share of the first portion of the second distribution paid on December 22, 1992, totaled $140,000. During the calendar year 1992, petitioners received a total of $805,981 in cash and

promissory notes as their share of the first and second distributions paid by EMFI for its fiscal year ended October 31, 1993.

EMFI's Form 1120S for the fiscal year ended October 31, 1993, indicates on line 20 of Schedule K, Shareholders' Shares of Income, Credits, Deductions, etc., that EMFI made a distribution other than dividends of $2,318,872. Line 22 of Schedule K provides a place for taxpayers to report "Total dividend distributions paid from accumulated earnings and profits". EMFI did not report any amount on line 22. EMFI's Schedule M-2, Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed, for the same year indicates on line 7 that EMFI made a nondividend distribution of $2,318,872. Schedules K-1, Shareholder's Share of Income, Credits, Deductions, etc., for the same time period indicate on line 20 that EMFI made a nondividend distribution to Mr. and Mrs. Thurman in the respective amounts of $758,745 and $1,228,320.

EMFI issued Forms 1099 to the shareholders for 1992 reflecting the first distributions for its fiscal year ended October 31, 1993, as taxable dividends. EMFI did not issue any Forms 1099 for either 1992 or 1993 with respect to the second distribution it declared for the fiscal year ended October 31, 1993.

Petitioners' original Federal income tax return for 1992 does not reflect any taxable dividends received from EMFI. On June 18, 1993, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1992 reporting taxable dividends of $665,981 from EMFI. On April 4, 1996, petitioners filed a third Form 1040X removing from taxable income the taxable dividends of $665,981 from EMFI and claiming a refund of tax proportionate to the reduction of income.[2] The IRS has not allowed the claim for refund filed by petitioners in their third amended return for the taxable year 1992.

Beginning in September 1995, EMFI was audited by the IRS for the fiscal year ended October 31, 1993. In 1996, in the course of discussions with Mr. Rockne Wilson, petitioners' accountant, the revenue agent examining EMFI's return for the fiscal year ended October 31, 1993, raised the issue of whether EMFI had made an election under section 1368(e)(3). The revenue agent determined that the amount of C corporation earnings and profits as of November 1, 1992, was $3,555,271 rather than $739,979. Although petitioners dispute this figure, the parties agree that EMFI's correct accumulated C corporation earnings and profits, as of November 1, 1992, exceed the total distributions of $879,979 by EMFI in 1992.

---

[2]Petitioners filed a second Form 1040X, dated Apr. 13, 1994, in which they made an unrelated $5,427 adjustment to income.

## Discussion

Respondent argues that, notwithstanding the fact that EMFI did not file an election statement for its fiscal year ended October 31, 1993, the doctrine of substantial compliance operates to treat EMFI as having made an election to first distribute earnings and profits to petitioners. Petitioners argue that no election was made by EMFI.

Generally, the "accumulated adjustments account" is a corporate account of an S corporation which is adjusted in the same manner as adjustments are made to a shareholder's basis under section 1367. Sec. 1368(e)(1)(A). The accumulated adjustments account generally contains a total of all undistributed earnings of the corporation previously taxed to the shareholders during the period in which the corporation has been an S corporation.

The basic purpose of the earnings and profits account is to keep track of the amount of corporate funds that have not yet been taxed to shareholders. Cameron v. Commissioner, 105 T.C. 380, 383-384 (1995), affd. sub nom. Broadaway v. Commissioner, 111 F.3d 593 (8th Cir. 1997). When a corporation elects pass-through treatment under subchapter S, its net income earned as an S corporation is taxed currently to the shareholders and thereafter is generally distributed tax free. Secs. 1366(a),

1368(b)(1), (c)(1); <u>Cameron v. Commissioner</u>, <u>supra</u> at 384.
Section 1371 provides, for taxable years after 1982, that the
accumulated earnings and profits that an S corporation carries
over from preelection years when it was a C corporation,
generally are not adjusted for the taxable years during which the
S corporation election is in effect.  Sec. 1371(c)(1); <u>Cameron v.
Commissioner</u>, <u>supra</u>.

Section 1368 sets out the ordering rules for the tax
treatment of S corporation distributions.  Section 1368(c)(1)
generally provides that an S corporation with earnings and
profits must treat its distributions as being first out of the
accumulated adjustments account, tax free to the extent of the
shareholder's adjusted basis in the stock.[3]  If the amount of the

---

[3]Sec. 1368(c)(1) provides:

    (c) S Corporation Having Earnings and Profits.--In
the case of a distribution described in subsection (a)
by an S corporation which has accumulated earnings and
profits--

        (1) Accumulated adjustments account.--
        That portion of the distribution which does
        not exceed the accumulated adjustments
        account shall be treated in the manner
        provided by subsection (b).

Sec. 1368(b)(1) provides:

    (b) S Corporation Having No Earnings and
Profits.--In the case of a distribution described in
subsection (a) by an S corporation which has no

(continued...)

distribution out of the accumulated adjustments account exceeds the adjusted basis of the stock, the excess shall be treated as gain from the sale or exchange of property.  Sec. 1368(b)(2); Williams v. Commissioner, 110 T.C. 27, 29-31 (1998).

Section 1368(c)(2) provides that if a distribution by an S corporation with accumulated earnings and profits exceeds the amount of its accumulated adjustments account, the portion of the distribution that exceeds such account will be treated as a dividend to the extent it does not exceed the accumulated earnings and profits of the S corporation.

Section 1368(e)(3)(A) provides for an election to reverse the order of distribution to allow a distribution of earnings and profits first and accumulated S corporation earnings next. Section 1368(e)(3)(A) provides:

> (A) In general--An S corporation may, with the consent of all of its affected shareholders, elect to have paragraph (1) of subsection (c) not apply to all distributions made during the taxable year for which the election is made.[4]

---

[3](...continued)
accumulated earnings and profits--

> (1) Amount applied against basis.--The distribution shall not be included in gross income to the extent that it does not exceed the adjusted basis of the stock.

[4]Sec. 1368(e)(3)(B) states "the term 'affected shareholder' means any shareholder to whom a distribution is made by the S corporation during the taxable year."

Generally, distributions by an S corporation making this election are all treated as made first from earnings and profits under section 1368(c)(2) and second from the accumulated adjustments account under section 1368(b), (c)(1).

Section 1368(e)(3) does not contain a description of the time or method in which an election to distribute earnings first from earnings and profits can be made.  However, the conference report of the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2365, which added section 1368(e)(3)(A) to the Code, states that "The procedures for electing dividend treatment will generally be similar to the procedures of prior law (Treas. Reg. sec. 1.1375-4(c)) allowing distributions out of earnings and profits to be made prior to distributions of previously taxed income."  H. Conf. Rept. 97-986, at 22 (1982), 1983-1 C.B. 498, 502.  Former section 1.1375-4(c), provided:  "For any taxable year for which such election is made, a statement of election shall be filed with a timely return".  T.D. 6432, 1960-1 C.B. 317, 345.  The conference report indicates that Congress intended that an election statement must be filed with a timely filed return.

Proposed regulations clarifying the method of election under section 1368 were issued in June 1992 prior to the due date or filing of petitioners' and EMFI's respective tax returns for 1992 and fiscal year ended October 31, 1993.  Section 1.1368-1(f)(5),

Proposed Income Tax Regs., 57 Fed. Reg. 24435 (June 9, 1992), related to the time and manner for making the election under section 1368(e)(3)(A) and provided:

> (5) Time and manner of making elections. A corporation makes an election for a taxable year under this paragraph (f) by attaching a statement to a timely filed original or amended return required to be filed under section 6037 for that taxable year. The statement must state that the corporation is making an election under § 1.1368-1(f), identify the election, and be signed under penalties of perjury by an officer of the corporation on behalf of the corporation and by each shareholder of the corporation who receives a distribution during the taxable year * * *

The proposed regulation indicates that the Secretary interpreted section 1368(e)(3) to require the attachment and filing of a written statement indicating the intent of the shareholders of the corporation that they unanimously agree to the treatment of all distributions during the year of election as distributed first from earnings and profits.[5]

Final and proposed regulations indicate that the written statement of election may be attached to a "timely filed original or amended return". Sec. 1.1368-1(f)(5)(iii), Income Tax Regs.;

---

[5]Final regulations under sec. 1368 were adopted and became effective for taxable years beginning on or after Jan. 1, 1994. T.D. 8508, 1994-1 C.B. 219, 227. The new regulations contain nearly identical language to the proposed regulations but, specifically, refer taxpayers to the consent requirement of the statute and simply require the statement to establish that the affected shareholders have consented rather than expressly requiring that they manifest consent by signing the statement. Sec. 1.1368-1(f)(5)(iii), Income Tax Regs.

sec. 1.1368-1(f)(5), Proposed Income Tax Regs., 57 Fed. Reg. 24435 (June 9, 1992). Thus, the regulations also allow for a taxpayer to make the election on an amended return. EMFI did not attach an election statement in respect to section 1368(e)(3) to its Form 1120S nor did it file an election with an amended Form 1120S.

Notwithstanding the fact that EMFI did not file an election statement with the Secretary under section 1368(e)(3), respondent argues that we should apply the doctrine of substantial compliance to find that EMFI elected to treat all distributions in its fiscal year ended October 31, 1993, as taxable distributions of earnings and profits. Petitioners argue that respondent may not invoke the doctrine of substantial compliance to create a binding election when the taxpayer does not make and file an election in accordance with the Secretary's requirements and procedures.

Historically, this Court has, under limited circumstances, excused taxpayers from strict compliance with procedural regulatory requirements as long as the taxpayer "substantially complied" by fulfilling the essential statutory purpose. See, e.g., American Air Filter Co. v. Commissioner, 81 T.C. 709, 720 (1983); Tipps v. Commissioner, 74 T.C. 458, 468 (1980); Taylor v. Commissioner, 67 T.C. 1071 (1977); Hewlett-Packard Co. v. Commissioner, 67 T.C. 736, 748 (1977); Sperapani v. Commissioner,

42 T.C. 308, 330-333 (1964). However, there is no defense of substantial compliance for failure to comply with the essential requirements of the governing statute. Prussner v. United States, 896 F.2d 218, 224 (7th Cir. 1990); see also Tipps v. Commissioner, supra at 468; Penn-Dixie Steel Corp. v. Commissioner, 69 T.C. 837, 846 (1978); Rockwell Inn, Ltd. v. Commissioner, T.C. Memo. 1993-158. We have looked to the specific requirements of the election provision to determine whether they relate to the substance or "essence" of the statutory and regulatory scheme. Young v. Commissioner, 83 T.C. 831, 838 (1984), affd. 783 F.2d 1201 (5th Cir. 1986); Tipps v. Commissioner, supra. In ascertaining whether a particular provision of a regulation must be literally complied with, it is necessary to examine its purpose, its relationship to other provisions, the terms of the underlying statute, and the consequences of failing to comply with the provision in question. Young v. Commissioner, supra; Hewlett-Packard Co. v. Commissioner, supra at 748-749; Valdes v. Commissioner, 60 T.C. 910, 913 (1973). In addition, the omission of the required material must not operate to respondent's prejudice. Tipps v. Commissioner, supra; Taylor v. Commissioner, supra, at 1079-1080; Rockwell Inn, Ltd. v. Commissioner, supra.

In the case at hand, respondent's determination that EMFI elected to distribute earnings and profits is not based upon an

election that was attached to EMFI's Form 1120S for the fiscal year ended October 31, 1993.  Instead, respondent's determination disregards the lack of a filed election, asserts that EMFI substantially complied with the election requirements, and, therefore, asserts that EMFI has in fact made the election under section 1368(e)(3).  This is the first instance we are aware of in which we have been asked to find, under the doctrine of substantial compliance, that a taxpayer is bound by an election where no election statement was filed, and the taxpayer refuses to file such election.[6]

Respondent argues that it would be unfair to apply the doctrine of substantial compliance so that only taxpayers may use it.  We need not decide the issue of whether the doctrine of substantial compliance may never be used to force a taxpayer to be bound by an election where the taxpayer substantially complied with the requirements to make the election.  Instead, for several reasons, we do not believe that the facts of this case warrant an application of the doctrine of substantial compliance to require

---

[6]In Brody v. Commissioner, T.C. Memo. 1975-47, the taxpayer argued that S corporation status may not be elected by filing an S corporation return instead of the form prescribed by the regulations.  Relying on the fact that the returns filed were S corporation returns, the Commissioner determined that the corporation had elected to be taxed under subchapter S.  In sustaining the Commissioner's determination, we relied almost exclusively on the taxpayers' failure to meet their burden of proof.  See Rockwell Inn, Ltd. v. Commissioner, T.C. Memo. 1993-158.

EMFI to treat the distributions in question as distributed first from earnings and profits.

Respondent's application of the doctrine of substantial compliance on the facts in the instant case is not in consonance with our previous application of the various factors used to determine whether a taxpayer has substantially complied with the essence of the governing statute. In Tipps v. Commissioner, supra at 468, we stated that "the omission of the required material has not operated to respondent's prejudice." The several factors in American Air Filter Co. v. Commissioner, supra at 719, which we have used to determine whether the regulatory requirements are "essential", may also be viewed in part as hinging on whether the omission of such requirements harms the IRS.[7] In effect, respondent asks us to apply factors, which heavily favor respondent's interests, to determine that petitioners are bound by an election which, in the first place,

_____

[7]In American Air Filter Co. v. Commissioner, 81 T.C. 709, 719-720 (1983), we similarly listed various factors, which we have used in determining whether strict compliance was required as follows: Whether the taxpayer's failure to comply fully defeats the purpose of the statute; whether the taxpayer attempts to benefit from hindsight by adopting a position inconsistent with his original action or omission; whether the Commissioner is prejudiced by the untimely election; whether the sanction imposed on the taxpayer for the failure is excessive and out of proportion to the default; and whether the regulation provided with detailed specificity the manner in which an election was to be made. See Taylor v. Commissioner, 67 T.C. 1071 (1977); Columbia Iron & Metal Co. v. Commissioner, 61 T.C. 5 (1973); Denman Tire & Rubber Co. v. Commissioner, 14 T.C. 706 (1950), affd. 192 F.2d 261 (6th Cir. 1951).

does not comply with the intent of the statute or the regulations proposed by respondent.

Applying existing law, substantial compliance with election requirements normally entails, at a minimum, a clear expression of the electing party's intention to elect appearing on either its original return or, if the circumstances necessitating an election arise after the filing of an original return, as soon as practicable on an amended return.  Fisher Indus., Inc. v. Commissioner, 87 T.C. 116, 122 (1986), affd. 843 F.2d 224 (6th Cir. 1988); see also Young v. Commissioner, supra at 839 (electing party must exhibit in some manner his unequivocal agreement to accept both the benefits and the burdens of the election).

Respondent argues that petitioners' signed statements of election and consent provide clear and unequivocal evidence of consent.  Respondent further argues that once EMFI made the alleged elections, all its actions and those of petitioners are consistent with having made the election.  Respondent contends that EMFI's Forms 1120S showed reductions of C corporation "earnings and profits" in 1988 and 1992.  Respondent asserts that this is evidenced by EMFI's Forms 1120S, which showed a $3 million reduction on line 26 (Other retained earnings) of Schedule L in December 1988, and elimination of the remaining retained earnings in the same manner on EMFI's Schedule L in

December 1992.  Finally, respondent argues that the fact that EMFI issued Forms 1099 to its shareholders for 1992 showing the $739,979 distribution as a taxable dividend is evidence of EMFI's intent to make the election.

However, both EMFI and petitioners exhibited other actions which militate against finding that the requisite intent to make the election existed.  EMFI did not file an election to distribute earnings and profits first as provided by section 1368(e)(3).  The schedules from EMFI's Form 1120S for the fiscal year ended October 31, 1993, do not indicate an election to first distribute earnings and profits or that such a distribution took place.

To the contrary, EMFI's Form 1120S for the fiscal year ended October 31, 1993, indicates that EMFI did not intend to make such an election.  Line 20 of Schedule K and line 7 of Schedule M-2 indicates that the distributions made were "other than dividend distributions".  EMFI specifically reported $2,318,872 in distributions other than dividends on line 20 of Schedule K and line 7 of Schedule M-2.  Line 22 of Schedule K provides a specific place for reporting total dividends paid to shareholders from earnings and profits.  EMFI reported no amount on line 22 indicating that no dividends were distributed in the fiscal year ended October 31, 1993.  Line 20 of Schedules K-1 for the same time period indicates that EMFI made a nondividend distribution

to Mr. and Mrs. Thurman in the respective amounts of $758,745 and $1,228,320.

Moreover, EMFI actually made two separate distributions that petitioners initially did not report as taxable income for 1992. Petitioners amended their 1992 Form 1040, the year in which the distributions were made and included the distributions in taxable income and paid the related tax. Ultimately, petitioners filed another amended return in which they removed the distributions from taxable income, made a claim for refund, and now assert that EMFI did not make an election to first distribute earnings and profits.

With respect to petitioners' individual filings, evidence that EMFI intended to file an election is further diminished by the fact that petitioners filed their first amended return, which represented the distributions as dividends, on June 18, 1993, whereas EMFI was not required to file Form 1120S for the fiscal year ended October 31, 1993, until long after petitioners filed their amended return. It is certainly conceivable that EMFI, through its officers, made a decision as to whether or not to file an election between the time that petitioners filed their amended return in June 1993 and the time that EMFI filed its corporate return.

Although there appears to be some confusion in petitioners' individual filings, it is clear that no election was filed by

EMFI on its corporate return, and petitioners have amended their tax return in an effort to consistently reflect the assertion that EMFI did not elect to treat its distributions as taxable to the extent of earnings and profits.

Of particular importance in this case is EMFI's unwillingness to amend its return to include an election. In prior cases in which we have applied the doctrine of substantial compliance to except taxpayers from literal compliance, taxpayers have argued that they intended to make the required election. Consistent with the assertion of substantial compliance, taxpayers have in many cases amended their returns to include a consistent election statement.[8] The Commissioner has also

---

[8] For examples of cases in which substantial compliance was found, see, e.g., United States v. Van Keppel, 321 F.2d 717 (10th Cir. 1963) (late filing of required agreement allowed); Taylor v. Commissioner, 67 T.C. 1071 (1977) (taxpayer offered to amend to comply with any election requirements); Hewlett-Packard Co. v. Commissioner, 67 T.C. 736 (1977) (late filing required); Columbia Iron & Metal Co. v. Commissioner, supra (required written declaration filed subsequent to filing return); Cary v. Commissioner, 41 T.C. 214 (1963) (election filed upon learning of defect).

For examples of cases in which substantial compliance has been denied, see, e.g., Fisher Indus., Inc. v. Commissioner, 843 F.2d 224 (6th Cir. 1988), affg. 87 T.C. 116 (1986) (taxpayer filed Form 970 late); Kerry v. Commissioner, 89 T.C. 327 (1987) (taxpayer amended corporate returns to include sec. 48(d) election); Estate of Gunland v. Commissioner, 88 T.C. 1453 (1987) (taxpayer attached required agreement to amended return); Young v. Commissioner, 83 T.C. 831 (1984) (election attached to amended return), affd. 783 F.2d 1201 (5th Cir. 1986); Thorrez v. Commissioner, 31 T.C. 655 (1958), affd. 272 F.2d 945 (6th Cir. 1959) (taxpayer amended return prior to notice of deficiency).

(continued...)

required that a consistent election be filed in order to meet the requirements of substantial compliance.  In Priv. Ltr. Rul. 90-43-010 (Oct. 26, 1990), on facts very similar to the instant case, the Commissioner ruled that the taxpayer substantially complied "Provided that no later than 30 days after the date of this letter, [the electing party] files a section 1368(e)(3)(A) election".[9]  Here, instead of causing EMFI to file a late election in an effort to substantially comply, petitioners amended their 1992 Form 1040 to report no taxable distributions were received.[10]  We, therefore, find that the conflicting

_____

[8](...continued)
But cf. Bond v. Commissioner, 100 T.C. 32 (1993) (substantial compliance found on information within the originally filed return); Hoffman v. Commissioner, 47 T.C. 218 (1966), affd. 391 F.2d 930 (5th Cir. 1968) (revocation of S corporation election allowed without amended or late filing).

[9]Although private letter rulings are not precedent, sec. 6110(j)(3), they "do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws."  Hanover Bank  v. Commissioner, 369 U.S. 672, 686 (1962); see Rowan Cos. v. United States, 452 U.S. 247, 259 (1981); Estate of Cristofani v. Commissioner, 97 T.C. 74, 84 n.5 (1991).

[10]Respondent argues that if EMFI is treated as not having made the election, then taxpayers in the future will be able to whipsaw the Government.  Respondent argues that taxpayers may substantially comply except for filing the election form and, later, depending on whether it is in the taxpayer's interest, effectively revoke the election by amending the shareholder's returns to request a refund.  However, by requiring EMFI to file an election, our decision in this case only reinforces the Commissioner's regulatory requirement that an election statement be filed.  Moreover, the Commissioner's regulations provide for an election to be made on a "timely filed original or amended
(continued...)

actions taken by EMFI and petitioners do not meet the minimum requirement of a clear and unequivocal expression of their intent to make the election.[11]  Fisher Indus., Inc. v. Commissioner, supra; Young v. Commissioner, supra.

For the above-stated reasons, we decline to apply the doctrine of substantial compliance in this instance to force petitioners and EMFI to treat distributions for their respective 1992 and October 31, 1993, years as distributions of earnings and

---

[10](...continued)
return".  Sec. 1.1368-1(f)(5)(iii), Income Tax Regs.; sec. 1.1368-1(f)(5), Proposed Income Tax Regs., 57 Fed. Reg. 24435 (June 9, 1992).  We do not see that the outcome of our decision today is meaningfully different than the current regulatory framework.

[11]We also note that some courts have taken a narrow view of the judicial doctrine of substantial compliance.  See Prussner v. United States, 896 F.2d 218, 224 (7th Cir. 1990); Credit Life Ins. Co. v. United States, 948 F.2d 723, 726-727 (Fed. Cir. 1991); Rockwell Inn, Ltd. v. Commissioner, T.C. Memo. 1993-158. In Prussner v. United States, supra at 224, the Court of Appeals for the Seventh Circuit addressed the application of the doctrine of substantial compliance, stating:

> The common law doctrine of substantial compliance
> should not be allowed to spread beyond cases in which
> the taxpayer had a good excuse (though not a legal
> justification) for failing to comply with either an
> unimportant requirement or one unclearly or confusingly
> stated in the regulations or the statute.  * * *
> [Emphasis added.]

See also Bartlett v. Commissioner, 937 F.2d 316, 321 (7th Cir. 1991), affg. Estate of Grimes v. Commissioner, T.C. Memo. 1988-576.

profits.  We hold that EMFI did not make a valid election under section 1368(e)(3).

Decision will be entered

under Rule 155.
