OPINION Buen, Judge: This case combines a system for examining and litigating partnership controversies that differs from typical deficiency procedures with missteps by both the agency charged with administering this system and petitioners’ representatives. The confluence of these missteps ultimately deprives us of jurisdiction over the partnership items set forth in the notice of deficiency that underlies this matter— a result mandated by both the statutory scheme and controlling precedent of the Court of Appeals for the Ninth Circuit, to which this case is appealable. But first, some background. Background I. The Transaction The underlying transaction in this case is what has come to be known as a Son-of-BOSS transaction, with this variant using foreign currency options. See generally Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007); Notice 2000-44, 2000-2 C.B. 255. The Bedrosians created two entities, JCB Stone Canyon Investments, LLC (LLC), and Stone Canyon Investors, Inc. (S corporation), which in turn formed a third entity, Stone Canyon Partners (Stone Canyon). On October 16, 2000, the Bedrosians timely filed Form 1040, U.S. Individual Income Tax Return, for 1999 in which they claimed large flowthrough losses stemming from the transaction through their interests in the LLC and the S corporation. Because Stone Canyon had flowthrough entities as its partners, the small partnership exception of section 6231(a)(l)(B)(i)[1] did not apply, and Stone Canyon was subject to the unified audit and litigation procedures of sections 6221-6234, commonly referred to as TEFRA.[2] These procedures affect not only the audit and litigation of a pass-through entity, but also the preparation of a passthrough entity’s return. The same day that the Bedrosians filed their return, Stone Canyon timely filed Form 1065, U.S. Partnership Return of Income, for 1999. On line 4 of Schedule B, Other Information, Stone Canyon answered “no” to the question “Is this partnership subject to the consolidated audit procedures of sections 6221 through 6233? If ‘Yes,’ see Designation of Tax Matters Partner below”. Notwithstanding the “no” answer on line 4, Stone Canyon designated the LLC as its tax matters partner (TMP). Stone Canyon attached to its Form 1065 a Schedule K — 1, Partner’s Share of Income, Credits, Deductions, etc., identifying the LLC as being an “INDIVIDUAL” in response to the question “What type of entity is this partner?”, even though the name of the partner was the LLC name. Stone Canyon identified the S corporation as an “S CORPORATION” in response to the same question on a second Schedule K-l. II. The Audit The parties have spilled a great amount of ink on the subject of what transpired during the audit, most of which is irrelevant to the ultimate conclusions in this case. Nonetheless, we summarize what transpired to provide context. In September 2003 Revenue Agent Harold Jung mailed Mr. Bedrosian a letter informing him that the Internal Revenue Service (IRS) had selected his Form 1040 for 1999 for audit. In the letter Revenue Agent Jung requested that Mr. Bedrosian consent to extend the period of limitations, which was set to expire in less than two months, on an enclosed Form 872, Consent to Extend the Time to Assess Tax. On September 10, 2003, the Bedrosians submitted to the IRS Form 2848, Power of Attorney and Declaration of Representative, designating Richard E. Hodge, an attorney, and Linda Olson, a certified public accountant, as their representatives with respect to the examination of their Form 1040 for 1999.[3] Revenue Agent Jung did not request a Form 2848 with respect to Stone Canyon, the S corporation, or the LLC. The Bedrosians submitted to the IRS the completed Form 872, in which they agreed to extend the period of limitations for assessment of their individual income tax for 1999 to August 31, 2004. Revenue Agent Jung did not request a form extending the period of limitations for assessment of tax attributable to partnership items and affected items of Stone Canyon for 1999. The parties agree that the Form 872 was ineffective to extend the period of limitations for assessment of tax attributable to partnership items and affected items of Stone Canyon for 1999.[4] The next month, for reasons unexplained in the record, the administrative files with respect to the audit were transferred from Revenue Agent Jung to Revenue Agent Deborah Smyth. By that time, the period set forth in section 6229(a), which is the minimum period within which to assess tax attributable to partnership items and affected items for Stone Canyon’s 1999 tax year, had expired.[5] Revenue Agent Smyth was well aware of that fact. And while she believed after reviewing the administrative files that Stone Canyon was subject to the TEFRA procedures, she continued conducting the Stone Canyon audit by examining the Bedrosians’ Form 1040 for 1999. She also examined the Bedrosians’ Form 1040 for 2000, which was filed on October 15, 2001. On their Form 1040 for 2000 the Bedrosians claimed a comparatively small net operating loss carryover from 1999 and a deduction for legal, accounting, consulting, and advisory fees (collectively, transaction fees). At Revenue Agent Smyth’s request the Bedrosians submitted to the IRS a second Form 872 for 1999, in which they agreed to further extend the period of limitations for assessment from August 31, 2004, to April 30, 2005. Also at Revenue Agent Smyth’s request, the Bedrosians submitted to the IRS Form 872-1, Consent to Extend the Time to Assess Tax As Well As Tax Attributable to Items of a Partnership, for 2000 in which they agreed to extend the period of limitations for assessment of their income tax, including tax attributable to partnership items and affected items of Stone Canyon, to April 30, 2005. In May 2004 Revenue Agent Smyth mailed a letter to Ms. Olson (with copies to the Bedrosians) offering the Bedrosians the opportunity to participate in a settlement. They chose not to participate. In November 2004 Revenue Agent Smyth mailed Ms. Olson a letter (with copies to the Bedrosians) acknowledging the Bedrosians’ choice and requesting that they provide additional information with respect to the transaction. Enclosed with the letter was the IRS’ fourth information document request. The letter stated: “Once we receive the information, we will provide you with Form 4549-A, Income Tax Examination Changes (Audit Report), which will show the tax deficiency, any applicable penalties, and interest you owe. If you wish to agree to the determination, you will sign and return Form 870 (Waiver).” Revenue Agent Smyth later participated in a conference call with IRS Office of Chief Counsel attorneys and the IRS Son-of-BOSS TEFRA coordinator to discuss “how to proceed with this case in order to disallow the net operating loss carryforward deductions claimed on Petitioners’ Form 1040 for the 2000 tax year, in view of * * * [her] determination that the limitations period for issuing a notice of final partnership administrative adjustment (FPAA) for the 1999 tax year had expired.” The TEFRA coordinator advised Revenue Agent Smyth that the IRS should issue an FPAA for 1999 in order to disallow the NOL carryforward deduction for 2000. Revenue Agent Smyth’s understanding of the TEFRA coordinator’s advice was “not that the Service would issue an FPAA for the 1999 tax year instead of the notice of deficiency * * * for the 1999 and 2000 tax years * * * [but] that the Service would issue an FPAA in addition to the notice of deficiency for the 1999 and 2000 tax years.” Revenue Agent Smyth called Ms. Olson and informed her that the IRS would soon issue a notice of beginning of administrative proceeding (NBAP) for 1999. Ms. Olson inquired as to why the IRS would issue an NBAP with respect to Stone Canyon for 1999 when Revenue Agent Smyth was in the process of issuing audit reports with respect to the Bedrosians’ Form 1040 for that same year. Revenue Agent Smyth responded that “the NBAP was procedural and that the TEFRA examination would be ‘opened and shut’.” On February 2, 2005, Revenue Agent Smyth mailed separate copies of the NBAP to Mr. Bedrosian as the sole managing member of the LLC and to him in his individual capacity. Revenue Agent Smyth did not mail a copy of the NBAP to Mr. Hodge or to Ms. Olson, presumably because the IRS did not request and did not have a power of attorney on file authorizing either of them to represent Stone Canyon, the S corporation, or the LLC. Also on February 2, Revenue Agent Smyth mailed Ms. Olson a letter stating in relevant part: “As promised, enclosed are copies of the proposed audit reports for the Bedrosians for their 1999 through 2002 tax years * * *. Besides using these for reference purposes, I would suggest that they also be checked for accuracy — given the large number of inter-related adjustments created by exam changes.” [6] Revenue Agent Smyth enclosed in the letter Forms 4549-A for 1999 through 2002. A few days later, Revenue Agent Smyth began drafting both an FPAA for Stone Canyon and a notice of deficiency for the Bedrosians. She completed the drafting of both the FPAA and the notice of deficiency the following day. A series of correspondence followed. On February 15, 2005, Revenue Agent Smyth mailed Ms. Olson Forms 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, and corrected Forms 4549-A for 1999 and 2000; these related to the examination of the Bedrosians. On February 18, 2005, Ms. Olson mailed Revenue Agent Smyth a letter informing her that the Bedrosians had received the NBAPs and had forwarded them to her; the NBAPs related to the examination of Stone Canyon. Ms. Olson further informed Revenue Agent Smyth of a new address for Stone Canyon, the S corporation, and the LLC. In fact, those entities were not yet receiving mail at that new address. In the last paragraph of the letter, Ms. Olson wrote: “You mentioned that these administrative proceedings would basically be opened and shut. Are there * * * any more documents that need to be reviewed other than the closing of the proceedings? If so then I may need to prepare [p]ower of [attorneys for each of them.” Revenue Agent Smyth never responded to Ms. Olson’s letter dated February 18, 2005, which her office received on February 22. However, Revenue Agent Smyth continued communicating with Ms. Olson regarding the Bedrosians’ audit. On March 29, 2005, Revenue Agent Smyth mailed Ms. Olson a letter (with copies to the Bedrosians) stating in relevant part: Enclosed you will find Form 4549-A, Income Tax Examination Changes (Audit Report) which shows the tax deficiency, any applicable penalties, and interest; explanations for the adjustments are provided on Form 886-A, Explanation of Items. To agree to the tax, penalties, and interest, you may sign the enclosed Form 870 (Waiver) and return to me at the above address. * * * If you do not agree with the tax, penalties, and interest shown on the Audit Report, a statutory notice of deficiency will be sent to you. Then on March 30, 2005, Revenue Agent Smyth closed her case file with instructions to the IRS’ processing unit to issue the notice of deficiency to the Bedrosians. On April 8, 2005 (62 days after mailing the NBAPs), the IRS mailed a total of 14 copies of the FPAA for 1999 to three different addresses on file for the Bedrosians, Stone Canyon, the S corporation, and the LLC. The IRS did not mail a copy of the FPAA to Mr. Hodge or to Ms. Olson. In the FPAA the IRS made partnership-level adjustments the effect of which was to disallow the losses stemming from the transaction. The IRS enclosed with the FPAA a notice under section 6223(e) labeled “Untimely Notice Letter — TEFRA Proceeding is Ongoing” informing the recipient that the IRS had failed to issue an NBAP within the time required (at least 120 days before the FPAA) and that the recipient could elect under section 6223(e)(3)(B) to opt out of the TEFRA proceeding. The IRS also enclosed with the FPAA Form 870-PT, Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts, and Form 4605-A, Examination Changes — Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations, for 1999. Eleven days later, on April 19, 2005, the IRS mailed the Bedrosians the notice of deficiency (with a copy to Ms. Olson) for 1999 and 2000 (2005 notice). In the 2005 notice the IRS made partner-level adjustments disallowing the flowthrough losses on the Bedrosians’ Form 1040 for 1999. Because the Bedrosians owned 100% of the interest in Stone Canyon through their interests in the LLC and the S corporation, the adjustments in the FPAA and those in the notice of deficiency resulted in the disallowance of the same losses, the former at the partnership level and the latter at the partner level. The IRS made some additional adjustments in the 2005 notice, including computational adjustments and adjustments disallowing the NOL carryover and the transaction fees for 2000. The IRS determined deficiencies, additions to tax, and penalties with respect to the Bedrosians’ Federal income tax for 1999 and 2000 as follows: Year Deficiency Addition to tax sec. 6651(a)(1) Penalty sec. 6662(a) $3,498,882 $134,781 $1,392,553 M CD CD CD 12,137 -0-4,855 tO O O O III. Litigation History On July 5, 2005, the Bedrosians timely filed a petition disputing the adjustments in the 2005 notice. Respondent answered. On August 30, 2005, the Bedrosians remitted $4,269,819 to the IRS. They designated the remittance to cover the 1999 and 2000 deficiencies and estimated interest on those deficiencies. The IRS treated the remittance as a payment. On June 30, 2006, almost a year after the Bedrosians had filed their petition, respondent moved to dismiss this case for lack of jurisdiction on the ground that the 2005 notice was invalid in that it consisted entirely of adjustments to partnership items or affected items. Respondent now claims that he has “consistently taken the position that * * * [the] Partnership is subject to the TEFRA provisions of the Code.” [7] We held that we do not have jurisdiction over the adjustments to partnership items or affected items that were listed in the notice of deficiency but that we do have jurisdiction over the disallowance of the deductions for transaction fees for 2000. Bedrosian v. Commissioner, T.C. Memo. 2007—375 (2005 notice case). The parties agreed that all of the adjustments for 1999 were partnership items or affected items. See id., slip op. at 7. We granted respondent’s motion to dismiss insofar as it related to the adjustments for 1999 and the NOL carryover for 2000 and denied the motion insofar as it related to the transaction fees.[8] On September 5, 2006, the IRS issued an affected items notice of deficiency to the Bedrosians (2006 notice). On November 30, 2006, the Bedrosians filed a timely petition in response to the 2006 notice. We held that we lacked jurisdiction over that case, however, because the deficiencies had been paid and assessed before the issuance of the 2006 notice. Bedrosian v. Commissioner, T.C. Memo. 2007-376 (2006 notice case), aff’d, 358 Fed. Appx. 868 (9th Cir. 2009). In other words, there was no deficiency. On May 1, 2007, the LLC, as the TMP of Stone Canyon, filed an untimely petition in response to the FPAA. Both parties filed motions to dismiss, with the TMP alleging that the FPAA was invalid because it was not mailed to the proper address and respondent alleging that the petition was untimely. We granted respondent’s motion to dismiss the FPAA case for lack of jurisdiction. We held that the FPAA was valid and that the petition was untimely. Stone Canyon Partners v. Commissioner, T.C. Memo. 2007-377 (FPAA case), aff’d sub nom. Bedrosian v. Commissioner, 358 Fed. Appx. 868 (9th Cir. 2009). The respective petitioners appealed the orders of dismissal for lack of jurisdiction in the 2006 notice case and the FPAA case and attempted to appeal the order in this 2005 notice case to the Court of Appeals for the Ninth Circuit. The Court of Appeals affirmed the dismissals in the 2006 notice case and the FPAA case. Bedrosian v. Commissioner, 358 Fed. Appx. at 869-871. To the extent the Bedrosians sought to appeal the holding in this case, the Court of Appeals dismissed the appeal for lack of jurisdiction on the ground that we had dismissed this case only in part and that there was no final judgment from which an appeal could properly be taken. Id. at 870. Notwithstanding that it dismissed the appeal, however, the Court of Appeals remarked about our jurisdiction in this case: “But both parties concede that the 2005 notice of deficiency was invalid because it was issued while partnership proceedings were pending. No assessment could possibly deprive the Tax Court of jurisdiction over that particular deficiency, because the Tax Court never had jurisdiction over ‘such deficiency’ in the first place.” Id. We interpret this statement as meaning that the 2005 notice was invalid only insofar as it covered partnership items. On February 2, 2010, the Bedrosians filed a motion for leave to file an amended petition in this case and lodged an amended petition raising a new theory, that “[t]he interests of justice require a finding that Petitioners’ be deemed to have elected that the partnership items of * * * [the Partnership] be converted to nonpartnership items on or before April 19, 2005”. On June 1, 2010, respondent filed an objection to the Bedrosians’ motion. In June 2010 this case was assigned to a Special Trial Judge pursuant to section 7443A and Rules 180 and 183. Because leave to amend a pleading shall be freely given, Rule 41, the Bedrosians’ motion was granted, thus allowing the amendment. Next the Bedrosians filed a motion for summary judgment arguing (1) that the Court has jurisdiction over all of the adjustments in the 2005 notice of deficiency and (2) that the adjustments for 1999 are barred by the statute of limitations. Along with the motion, the Bedrosians filed a memorandum of points and authorities in which they argued that the adjustments in the 2005 notice that relate to partnership items were converted to nonpartnership items because, they assert, the partnership items for 1999 were converted to non-partnership items by operation of section 6223(e)(2) and the partnership items for 2000 (and alternatively for 1999) were converted to nonpartnership items through a deemed election under section 6223(e)(3) that was made by filing the petition in this case. The Bedrosians’ motion for summary judgment did not address the transaction fees for 2000, which we previously held were neither partnership nor affected items. Bedrosian v. Commissioner, T.C. Memo. 2007-375. Respondent filed an objection to the Bedrosians’ motion for summary judgment to which the Bedrosians replied. The Special Trial Judge filed and served on the parties recommended findings of fact and conclusions of law (proposed report) pursuant to Rules 182(e) and 183. The proposed report concludes that “the petition is sufficient to effect an election of nonpartnership item treatment.” The proposed report does not address the Bedrosians’ statute of limitations argument. Pursuant to Rule 183(c), respondent filed objections to the proposed report and the Bedrosians filed a response to respondent’s objections. In accordance with Rule 183(c), this case was then assigned to a Judge of this Court. While considering the issues addressed in the proposed report, the Court ordered the parties to file additional memoranda regarding the potential applicability of section 6231(g)(2). Under Rule 183(d), “[t]he Judge to whom the case is assigned may adopt the Special Trial Judge’s recommended findings of fact and conclusions of law, or may modify or reject them in whole or in part, or may direct the filing of additional briefs, or may receive further evidence, or may direct oral argument, or may recommit the recommended findings of fact and conclusions of law with instructions.” See also Rawls Trading, L.P. v. Commissioner, 138 T.C. 271, 284 (2012) (“[W]e are under an affirmative duty to investigate the extent of our subject matter jurisdiction.”). More specifically, the Court inquired whether respondent reasonably determined that TEFRA did not apply to Stone Canyon for the years at issue. In short, section 6231(g)(2) provides that the TEFRA procedures do not apply to a partnership if the Secretary reasonably but erroneously determines, on the basis of the partnership’s return, that the partnership is not subject to TEFRA. If section 6231(g)(2) applies, then a partnership that should be subject to TEFRA will instead be subject to the deficiency procedures of sub-chapter B of chapter 63 of the Code (i.e., the normal deficiency procedures). The parties filed opening and answering briefs addressing their positions as to whether section 6231(g)(2) applies under the facts of this case. Respondent argues that section 6231(g)(2) does not apply because the IRS did not determine that Stone Canyon was not subject to TEFRA and that, if the IRS had made such a determination, the determination would not have been reasonable. In contrast, the Bedrosians argue that section 6231(g)(2) applies because the IRS determined that the normal deficiency procedures applied, and that the IRS’ determination was reasonable.[9] This briefing turned into a sideshow. Respondent admitted to making erroneous statements on the record regarding what happened during the course of the examination, and the Bedrosians went on the offensive. In their answering brief, the Bedrosians accused respondent of taking “deliberately false and fraudulent actions and * * * [making] false and fraudulent representations to the Court since the outset of this case.” Respondent subsequently filed a response to the Bedrosians’ allegations of fraud, in which respondent “apologize[d] to the Court and to Petitioners’ Counsel for not clearly identifying and explaining the ostensible conflict between the Memorandum Brief and respondent’s prior representations.” The Bedrosians then filed a reply to respondent’s response to the allegations of fraud, in which they contend that the “implausibility and incongruity of respondent’s statements and actions with respect to respondent’s current position, combined with respondent’s previous misrepresentations, make the current version of the ‘facts’ impossible to believe.” Ultimately, this sideshow has no bearing on this case. Discussion I. Summary Judgment Summary judgment may be granted where the pleadings and other materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff’d, 17 F.3d 965 (7th Cir. 1994). The burden is on the moving party (in this case, the Bedrosians) to demonstrate that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74—75 (2001). In considering a motion for summary judgment, evidence is viewed in the light most favorable to the nonmoving party. Bond v. Commissioner, 100 T.C. 32, 36 (1993). The nonmoving party may not rest upon the mere allegations or denials of his or her pleading but must set forth specific facts showing there is a genuine dispute for trial. Sundstrand Corp. v. Commissioner, 98 T.C. at 520. II. Conversion Under Section 6223(e) The Bedrosians’ motion for summary judgment focuses on section 6223(e). Section 6223(e) provides alternate rules for when the IRS fails to issue certain notices within certain time constraints. More specifically, the IRS is required to issue an NBAP at least 120 days before it issues an FPAA. Sec. 6223(d)(1). The failure to allow sufficient time between the NBAP and the FPAA does not invalidate either notice. Starlight Mine v. Commissioner, T.C. Memo. 1991-59 n.3 (“Petitioners also contend that the FPAA was invalid because not all the notice partners were sent copies of the FPAA. However, see section 6223(e) for a notice partner’s rights in such a situation; there is no provision therein for invalidating an FPAA sent to the TMP.”). Instead, the failure gives rise to statutory rights under section 6223(e). The specific remedy afforded to the taxpayer differs depending on whether the proceeding is ongoing at the time the IRS mails notice to the taxpayer. Compare sec. 6223(e)(2), with id. para. (3). A. Section 6223(e)(2) — Proceedings Finished The Bedrosians first argue that their partnership items converted to nonpartnership items by operation of law under section 6223(e)(2). Section 6223(e)(2) applies if, at the time the IRS mails notice to the taxpayer, the TEFRA proceeding has concluded. The Code specifically defines what it means for the proceeding to have concluded: either (i) the period within which to have filed a petition with respect to an FPAA must have expired with no petition’s having been filed or (ii) a decision with respect to an FPAA proceeding that was actually brought must have become final. Only if one of those events has occurred will a partner’s items be deemed converted to nonpartnership items unless the partner opts to be bound by the TEFRA proceeding. Sec. 6223(e)(2). Factually, neither of those events had occurred at the time notice was mailed to the partners of Stone Canyon. The IRS mailed the NBAP and the FPAA 62 days apart, and at the time that either was mailed, the TEFRA proceeding was ongoing. Therefore, section 6223(e)(2) simply could not apply. The Bedrosians argue, however, that we should read a third test for the conclusion of a partnership proceeding into section 6223(e)(2) — that the period of limitations for assessment has expired. There is no support for this argument in the statute; moreover, it is logically unworkable. The Code is explicit regarding what causes a conversion under section 6223(e)(2), and there is no mention of a period of limitations. Moreover, the expiration of the period of limitations does not cause a conversion of partnership items to nonpartnership items under the other TEFRA provisions relating to the conversion of partnership items found in section 6231(b) and (c). To the extent the Bedrosians ask us to read such a rule into the statute, we cannot do so. Congress writes the laws; we do not. And such a rule would make little sense. The period of limitations for one partner may be very different from that for another. If one partner is an unidentified partner, then section 6229(e) would hold open that partner’s period of limitations until at least one year after that partner is properly identified, which may be longer than the periods of limitations of other partners.[10] Likewise, because section 6229 operates only as a minimum period of limitations, if one partner had a substantial omission of income on his personal return, then that partner’s period of limitations would be held open beyond those of the other partners. See generally Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. at 533. Moreover, section 6226(d)(1) explicitly provides that the time and place for a partner to raise an affirmative defense relating to the period of limitations is in the TEFRA proceeding. Treating the expiration of the period of limitations as an automatic conversion would conflict with this provision. The rule the Bedrosians advocate would simply be unworkable. In short, we agree with the proposed report’s discussion of section 6229(e)(2) both for the reasons stated in it and those stated above. B. Section 6223(e)(3) — Proceedings Still Going On The Bedrosians’ alternative argument is that they made a timely election to have their partnership items converted to nonpartnership items under section 6223(e)(3). Like section 6223(e)(2), discussed above, section 6223(e)(3) applies when the IRS issues an NBAP or an FPAA outside of the time-frame required by section 6223(d). In this case, the IRS issued the NBAP with respect to Stone Canyon less than 120 days before the FPAA, so this first hurdle is met. In contrast to section 6223(e)(2), section 6223(e)(3) applies only if the TEFRA proceeding is ongoing at the time the IRS issues the notice. Again, as discussed above, the notices were mailed to the partners 62 days apart. When the NBAP was mailed, the FPAA had not yet been issued, so the period within which to petition for a review of the FPAA had not yet begun to run. And because the FPAA was mailed simultaneously to the TMP and to the Bedrosians, at the time the FPAA was mailed the period within which to file a petition from that FPAA had just begun. It certainly had not lapsed. Thus, the TEFRA proceeding was ongoing, so this hurdle is likewise met. In such a situation, a taxpayer has the same options as under section 6223(e)(2), but the manner of electing is reversed. Specifically, if a partner makes a timely election, the partner may opt out of the TEFRA proceeding by having his items converted to nonpartnership items. Sec. 6223(e)(3)(B). In the absence of an election, however, the partner remains bound by the TEFRA proceeding. Sec. 6223(e)(3) (“the partner shall be a party to the proceeding unless such partner elects”). The question for the Court is whether the Bedrosians made the election. The proposed report finds that such an election was made under the doctrine of substantial compliance; we conclude otherwise as a matter of law. We give due regard to the findings of fact in the proposed report, see Rule 183(d), and indeed, we take no issue with those findings of fact. It is in the application of the law to those facts where we find error. To opt out of the TEFRA proceeding under section 6223(e), the electing partner must make an election as follows: (2) Time and manner of making election. The election shall be made by filing a statement with the Internal Revenue Service office mailing the notice regarding the proceeding within 45 days after the date on which that notice was mailed. (3) Contents of statement. The statement shall— (i) Be clearly identified as an election under section 6223(e)(2) or (3), (ii) Specify the election being made (that is, application of final partnership administrative adjustment, court decision, consistent settlement agreement, or nonpartnership item treatment), (iii) Identify the partner making the election and the partnership by name, address, and taxpayer identification number, (iv) Specify the partnership taxable year to which the election relates, and (v) Be signed by the partner making the election. [Sec. 301.6223(e)-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987).] The Bedrosians focus on their petition as their purported election under this regulation. The petition, however, did not satisfy the criteria for making an election under section 6223(e)(3). We begin with the fact that the petition was not filed within the time for making an election under section 301.6223(e)-2T, Temporary Proced. & Admin. Regs., supra. The regulation requires that the election be made within 45 days after the date on which the notice is mailed. Although it is unclear whether the “notice” refers to the NBAP or the FPAA, because the FPAA is the later notice in this case, we will presume the FPAA is the operative notice.[11] The petition was filed on July 5, 2005, 88 days after the mailing of the FPAA. The petition also was not filed with the proper office for making an election under section 6223(e). The regulation requires that the election be filed with the office that issued the notice (we will presume “notice” refers to the FPAA). The petition was not filed with the office that issued the FPAA; indeed, it was not filed with the IRS at all. The petition was filed with this Court. The petition also does not clearly indicate that it was an election under section 6223(e)(3). In fact, the original petition filed in this case did not indicate that the Bedrosians intended to make an election of any kind; this position was first raised by the amended petition, lodged 1,761 days after the IRS mailed the FPAA, which stated that the Bedrosians should “be deemed to have elected that the partnership items of Stone Canyon Partners be converted to nonpartnership items”. Moreover, because the Bedrosians did not know of their eligibility to make an election and did not contemplate that they were making such an election, it is unsurprising that the original petition did not specify the nature of the election that was being made (in this case, nonpartnership item treatment). Some of the requirements for making an election under section 6223(e) might, arguably, be satisfied by the petition. It identified the partner and the partnership, although it did not contain the partnership address or taxpayer identification number. The petition mentioned the years at issue in the deficiency case, which are the same years that would have been the subject of an election. And although not signed by the partner making the election, the petition was signed by counsel for that partner. The Bedrosians argue that it would be “untenable” to hold them to the requirements of making a proper election because they had not received actual notice within the 45-day period within which to make such an election. This amounts to rearguing the Stone Canyon Partners case that we already decided and that the Court of Appeals for the Ninth Circuit already affirmed. Stone Canyon Partners v. Commissioner, T.C. Memo. 2007-377. Actual notice is not the standard; the standard is whether the IRS met the requirements for sending proper notice. We already held that it did, and the Court of Appeals already affirmed our decision in that case. Recognizing that the Bedrosians did not make a proper election, the proposed report turns to the doctrine of substantial compliance, correctly setting forth the standard. The proposed report states: The substantial compliance doctrine is a narrow equitable doctrine that courts use to avoid taxpayer hardship if the taxpayer establishes that he or she intended to comply with a provision, did everything reasonably possible to comply with the provision, but did not comply with the provision because of a failure to meet the provision’s specific requirements. [Proposed report at 13-14 (citing Samueli v. Commissioner, 132 T.C. 336, 345 (2009), Sawyer v. Cnty. of Sonoma, 719 F.2d 1001, 1007-1008 (9th Cir. 1983), and Fischer Indus., Inc. v. Commissioner, 87 T.C. 116, 122 (1986), aff’d, 843 F.2d 224 (6th Cir.1988)).] The proposed report correctly notes that the manner in which the election is made is regulatory, not statutory, and thus strict compliance is not required. Id. at 14-15. In doing so, however, the proposed report states that “the Court has found that the documents submitted in lieu of a formal election must ‘evidence an affirmative intent on taxpayer’s part to make the required election and be bound thereby.’” Id. at 17 (quoting Fischer Indus., Inc. & Subs. v. Commissioner, 87 T.C. at 122). But the proposed report does not address this affirmative intent requirement in its substantial compliance analysis. The Bedrosians did not have the affirmative intent to make the required election; they had not received the FPAA or the notice under section 6223(e). Presumably they did not even know that such an election was available to them at the time. Indeed, elsewhere the proposed report acknowledges as much, stating that “petitioners raise a new theory [in their amended petition] that there was a constructive or deemed election converting all partnership items for 1999 and 2000 into nonpartnership items.” If an election under section 6223(e) was a new theory in 2010 when the amended petition was filed, then it could not have been the Bedrosians’ “affirmative intent” in 2005 when they filed their initial petition. The proposed report thoroughly strings together examples of substantial compliance, yet it does not address the common thread of intent. In the cited cases, the people who successfully invoked the doctrine of substantial compliance intended to make an election. Indeed, the first such case cited by the proposed report is Samueli v. Commissioner, 132 T.C. 336, which involved a failed attempt to invoke substantial compliance, but even there the taxpayers were able to show intent. That TEFRA-related case involved a situation in which the taxpayers alleged that, when they filed an amended individual income tax return, they really intended to file an administrative adjustment request under section 6227. Their argument failed because “[t]he requisite intent needed to be present contemporaneously with the filing of the partner AAR, not later when petitioners believed it to be more advantageous to have had that intent initially.” Id. at 345-346. Likewise here; the intent to make an election under section 6223(e) needed to be present at the time the purported election was made, not 1,761 days later and with the benefit of hindsight. Another case cited in the proposed report also focused on intent, but phrased the standard a bit more expansively. In Fischer Indus., Inc., the Court articulated the standard as one that is governed by intent, stating: “We have examined the cases as to what constitutes a statement of election under various provisions of the Internal Revenue Code and have found that, absent a formal election, a submitted return and its attached schedules must evidence an affirmative intent on taxpayer’s part to make the required election and be bound thereby. Failure to manifest such intent has repeatedly resulted in taxpayer’s alleged election being rejected.” * * * [Fischer Indus., Inc. v. Commissioner, 87 T.C. at 122 (quoting Atl. Veneer Corp. v. Commissioner, 85 T.C. 1075, 1082-1083 (1985), aff’d, 812 F.2d 158 (4th Cir. 1987)); citations omitted.] In that case, the Court noted that an election can, in some situations be made on an amended return, stating that “if the circumstances necessitating an election arise after the filing of an original return, [the election can be made] as soon as practicable on an amended return.” Id. In the case before us, the purported election does not appear on a return but on the petition filed in this Court. If we were to apply the standard from Fischer in this case, we would ask whether the Bedrosians’ intent to elect out of TEFRA appeared on either the original petition filed in this case or “as soon as practicable on an amended” petition. Again, no such intent appears on the original petition. The Bedrosians first raised the notion of an election under section 6223(e) at least 33 months after they became aware of the FPAA.[12] In the interim, Stone Canyon and the Bedrosians had lost jurisdictional arguments in both this Court and in the Court of Appeals for the Ninth Circuit. This was not “as soon as practicable”; this was with the benefit of hindsight. And an attempt to benefit from hindsight weighs against a finding of substantial compliance. Taylor v. Commissioner, 67 T.C. 1071, 1077-1078 (1977). Even if we look past the lack of intent, there is a lack of substantial compliance in the manner the election was made. The proposed report cites various cases that found substantial compliance where a taxpayer made a footfault in making an election. Such footfaults include making the election with the wrong IRS office, Hewlett-Packard Co. v. Commissioner, 67 T.C. 736, 748 (1977), omitting information, Sperapani v. Commissioner, 42 T.C. 308, 330-333 (1964), or making an untimely election, Estate of Chamberlain v. Commissioner, T.C. Memo. 1999-181, aff’d, 9 Fed. Appx. 713 (9th Cir. 2001). In the various examples of substantial compliance cited in the proposed report, however, the taxpayers made isolated footfaults. A taxpayer may well have intended to make an election, but as a result of an error or omission the taxpayer did not fully comply with the requirements to make an election. In such a situation a taxpayer might be deemed to have substantially complied. But aggregating footfaults eventually moves away from compliance, beyond substantial compliance, and all the way to noncompliance. The Bedrosians did not submit the supposed election to the proper IRS office, did not include the necessary information, and did not make an election in the time allowed. This cannot be said to be substantial compliance. The proposed report concludes that “[flailing to treat the petition as an election where a reasonable fix can be made under the circumstances would lead to a harsh result which is well out of proportion to the omission. Without such a fix, petitioners would be denied their day in Court.” Proposed report at 18 (citations omitted). The Bedrosians’ day in court to challenge partnership items was available to them by filing a timely petition from the FPAA. If they did not receive notice, it was by operation of the last known address rule as implemented through TEFRA. While the result might be unfortunate, this is the way the TEFRA rules operate in this case. And the Bedrosians have already challenged whether the TEFRA notice was effective and lost, in both this Court and the Court of Appeals for the Ninth Circuit. It is not for us to create a remedy where none exists. In sum, we conclude that the Bedrosians did not intend to make an election under section 6223(e)(3). Even if we look past their lack of intent, we conclude that their petition did not substantially comply with the requirements to make such an election. In so concluding, we do not disturb the findings of fact in the proposed report. III. Application of Section 6231(g)(2) In an effort to explore options that even the parties had not considered, the Court ordered the parties to submit memoranda on the question of whether section 6231(g)(2) might apply in this case. Under section 6231(g)(2), the TEFRA provisions do not apply to a partnership if the Secretary reasonably determines, on the basis of the face of the partnership return, that TEFRA does not apply. A. Application of TEFRA In prior cases we have described the TEFRA procedures as “distressingly complex and confusing”. See, e.g., Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 92 (2012); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. at 539-540. It can even be complex and confusing to determine whether a partnership is subject to TEFRA. The TEFRA provisions begin with the presumption that TEFRA applies to any entity that is required to file a partnership return. Sec. 6231(a)(1)(A). But there is an exception for small partnerships. A small partnership is any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner. Sec. 6231(a)(l)(B)(i). Implicit in this exception, a partnership will not be considered to be a small partnership if any partner during the taxable year is a “pass-thru partner”. Id.; Brennan v. Commissioner, T.C. Memo. 2012-187, 2012 WL 2740897, at *3; sec. 301.6231(a)(l)-l(a)(2), Proced. & Admin. Regs. A “pass-thru partner” is a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership, and includes disregarded entities such as single-member LLCs. See 6611, Ltd. v. Commissioner, T.C. Memo. 2013—49, at *62 n.29; Tigers Eye Trading, LLC v. Commissioner, T.C. Memo. 2009-121, 2009 WL 1475159, at *11; Rev. Rui. 2004-88, 2004-2 C.B. 165. Stone Canyon was subject to TEFRA. Both partners of Stone Canyon were passthrough partners; as a result it did not qualify as a small partnership and was subject to the TEFRA procedures. Yet until the IRS issued its notices, and perhaps afterward, there was apparent confusion over whether TEFRA applied to the adjustments at issue. B. Section 6231(g) Congress was aware of the problem of determining whether TEFRA applies, and it enacted section 6231(g) as part of the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1232(a), 111 Stat. at 1023, in an attempt to address the problem. Section 6231(g) provides: SEC. 6231(g). Partnership Return To Be Determinative of Whether Subchapter Applies.— (1) Determination that subchapter applies. — If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter applies to such partnership for such year but such determination is erroneous, then the provisions of this subchapter are hereby extended to such partnership (and its items) for such taxable year and to partners of such partnership. (2) Determination that subchapter does not apply. — If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter does not apply to such partnership for such year but such determination is erroneous, then the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year or to partners of such partnership. This provision was intended as a relief provision for the IRS in situations in which the IRS has difficulty determining whether a partnership is subject to TEFRA. The House Ways and Means Committee report makes this clear, stating, in part: Reasons for Change The IRS often finds it difficult to determine whether to follow the TEFRA partnership procedures or the regular deficiency procedures. * * * [T]he IRS might inadvertently apply the wrong procedures and possibly jeopardize any assessment. Permitting the IRS to rely on a partnership’s return would simplify the IRS’ task. Explanation of Provision The bill permits the IRS to apply the TEFRA audit procedures if, based on the partnership’s return for the year, the IRS reasonably determines that those procedures should apply. Similarly, the provision permits the IRS to apply the normal deficiency procedures if, based on the partnership’s return for the year, the IRS reasonably determines that those procedures should apply. [H.R. Rept. No. 105-148, at 587-588 (1997), 1997-4 C.B. (Vol. 1) 319, 909-910.] As the committee report makes clear, Congress’ goal in enacting section 6231(g) was to simplify the IRS’ task of choosing between the TEFRA procedures and the normal deficiency procedures by permitting the IRS to rely on a partnership’s return. Paragraph (1) of section 6231(g) extends the TEFRA procedures to a non-TEFRA partnership where the IRS reasonably but erroneously determines that those procedures apply. Paragraph (2) of section 6231(g) operates to make the provisions of TEFRA inapplicable to a TEFRA partnership where the IRS reasonably but erroneously determines that TEFRA does not apply. By providing these alternatives, it is clear that Congress intended that the IRS would make one of two mutually exclusive determinations with respect to a partnership on the basis of the partnership’s return: either TEFRA applies or it does not. C. Section 6231(g)(2) The parties agree that Stone Canyon is properly subject to TEFRA. As previously stated, section 6231(g)(1) operates to bring a non-TEFRA partnership within the scope of TEFRA; that section is clearly not applicable here. Section 6231(g)(2) has the opposite effect. It operates to take a TEFRA partnership outside the scope of TEFRA by making the provisions of TEFRA inapplicable to the partnership. The parties disagree whether section 6231(g)(2) applies here. Section 6231(g)(2) applies to a partnership for a taxable year if three elements are met: (1) the IRS determined on the basis of the partnership’s return that the TEFRA procedures did not apply to the partnership for that year; (2) the determination was reasonable; and (3) the determination turned out to be erroneous. This third element is not at issue. The parties agree that Stone Canyon is subject to TEFRA. Thus it follows that if the IRS had determined on the basis of the Stone Canyon return that TEFRA does not apply, then that determination would have been erroneous. The parties dispute the first two elements of section 6231(g)(2). The Bedrosians argue that the “IRS Clearly Determined that the Normal Deficiency Procedures Applied in Our Case” and that “there is ample evidence of the reasonableness” of that determination. Respondent argues that the IRS “did not determine by reference to the Partnership return that the normal deficiency procedures apply in this instance” and that “any determination that [the] TEFRA procedures did not apply to the Partnership would have been unreasonable as [a] matter of law.” We address each of these elements in turn. 1. A Determination That TEFRA Does Not Apply The first element of section 6231(g)(2) is met in this case if, on the basis of Stone Canyon’s 1999 return, the IRS determined that the TEFRA procedures did not apply. Neither the statute nor the committee report provides any guidance as to the meaning of the phrase “on the basis of a partnership return” or as to when the IRS is to make its determination. However, both the TEFRA and non-TEFRA provisions provide a clear indication of when the IRS has made a determination — the notice that concludes the examination. In a TEFRA case this is the notice of final partnership administrative adjustment; in a deficiency case this is the notice of deficiency. We have made clear, back to the earliest days of TEFRA litigation, that the FPAA is the IRS’ determination. In Clovis I v. Commissioner, 88 T.C. 980, 982 (1987), we wrote: The FPAA is to the litigation of partnership items and affected items pursuant to the partnership audit and litigation provisions of section 6221 et seq., what the statutory notice of deficiency is to tax controversies before this Court that involve respondent’s determination of a deficiency, i.e., it is the notice to affected taxpayers that respondent has made a final administrative determination for particular tax years. Inherent in the determination of partnership items is the determination that TEFRA applies to the partnership in which those items arose; if TEFRA did not apply there would be no FPAA and no partnership items. In contrast, one might argue that the IRS determined at some earlier time that TEFRA did not apply. Undoubtedly, the IRS initially treated the examination underlying this case as though it was not a TEFRA examination. The Form 1040 was assigned to Revenue Agent Jung for examination. Shortly thereafter, the IRS requested that the Bedrosians extend their period of limitations, not that attributable to items of Stone Canyon. The Bedrosians provided a power of attorney with respect to their personal tax matters, not those of Stone Canyon. See sec. 301.6223(c)-l(e)(2), Proced. & Admin. Regs, (providing specific requirements for furnishing a power of attorney with respect to TEFRA proceedings); Internal Revenue Manual (IRM) pt. 8.19.6.5(2) (June 1, 2007) (“For a Form 2848 to cover both partnership items and non-partnership items, the partner should state in the power of attorney that authority for both matters is granted to the representative.”). The IRS then communicated with the Bedrosians’ representative about the examination, including providing proposed audit changes that related to items originating in the partnership. But none of this amounts to a determination. These events are part of the give-and-take of an ongoing examination. To look to the actions within an ongoing exam to find a “determination” would be an unworkable rule raising any number of problems. This would arguably permit anyone to look behind the final notice (either FPAA or notice of deficiency) to try to argue that the IRS had, at some earlier time, determined that the opposite procedure applies. Looking behind the notice is disfavored. See Greenberg’s Express, Inc. v. Commissioner, 62 T.C. 324, 327—328 (1974) (“As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent’s motives or of the administrative policy or procedure involved in making his determinations.”). In making that inquiry, the Court would look to some undefined standard for what constituted such a determination. Moreover, it would leave open the question of which IRS employees have the authority to make such a determination. Section 6231(g) rests that power with the Secretary, but we can find no specific delegation of this authority. In contrast, notices that conclude an audit, an FPAA or a notice of deficiency, have long been understood as determinations. Clovis I v. Commissioner, 88 T.C. at 982. The IRS has delegated the authority to issue them. See, e.g., Delegation Orders 4-8 (authority to issue a notice of deficiency) and 4-19 (authority to issue an FPAA). And the notices have the benefit of providing a clear demarcation of when a determination was made. In this case, however, the IRS issued both notices: the IRS issued an FPAA for Stone Canyon on April 8, 2005, and a notice of deficiency to the Bedrosians making the same adjustments (plus additional adjustments) 11 days later. We believe the earlier notice controls. Neither section 6231(g) nor the committee report explicitly addresses the possibility that the IRS might audit a partnership using both procedures. When Congress enacted the TEFRA procedures, it intended the normal deficiency procedures and the TEFRA procedures to be separate and distinct procedures, with the former governing nonpartnership items and the latter governing partnership items. Even the IRM describes the two procedures as “mutually exclusive”. See IRM pt. 4.31.2.1.1(1) (June 1, 2004) (“[T]he TEFRA partnership rules and the deficiency procedures are mutually exclusive.”). Nonetheless, the IRS occasionally follows both procedures in practice to protect the Government’s interests when it is unsure which of the procedures applies. See id. pt. 4.31.2.1.8(1) (June 20, 2013) (“These key cases are controlled as both TEFRA and nonTEFRA. This is done when it is unclear whether a key case is TEFRA or nonTEFRA to protect the government’s interest.”). By implication, however, section 6231(g) makes it clear that only one determination can be made for the partnership. In other areas within TEFRA, a single partner can be removed from a TEFRA proceeding such that adjustments are made with respect to one partner while all other partners are bound by the TEFRA proceeding. See, e.g., secs. 6227(d)(1), (3), 6231(c)(2). In contrast, section 6231(g) addresses partnershipwide, not partner-specific, determinations. Both section 6231(g)(1) and (2) make this clear: if paragraph (1) applies, “then the provisions of this subchapter are hereby extended to such partnership”, and if paragraph (2) applies, “then the provisions of this subchapter shall not apply to such partnership.” (Emphasis added.) There is nothing in section 6231(g) to indicate that Congress intended to allow the IRS to determine that TEFRA applies to one partner in a partnership while simultaneously determining that it does not apply to another partner in the same partnership. Thus, we conclude that the IRS must make a single determination for the partnership. In this instance, the IRS determined that TEFRA applies to the partnership. The FPAA was the first notice issued and clearly indicated that the IRS was taking the position that TEFRA applied to Stone Canyon. Because section 6231(g) requires a single, partnershipwide determination, the IRS could not thereafter determine that TEFRA did not apply to that same partnership. And, under the facts of this case, a determination that TEFRA did not apply to Stone Canyon would not have been reasonable. 2. Reasonableness If the IRS had determined that TEFRA does not apply to Stone Canyon, that determination would not have been reasonable. For section 6231(g)(2) to apply, the IRS must reasonably determine that the partnership at issue is not subject to TEFRA. The Code does not define what is reasonable for purposes of section 6231(g)(1) or (2). There is no indication that Congress intended the term “reasonable” to have any specific meaning, and so we give it its ordinary meaning. See Crane v. Commissioner, 331 U.S. 1, 6 (1947); Keene v. Commissioner, 121 T.C. 8, 14 (2003). In determining the ordinary meaning of words, it is appropriate to consult dictionaries. See Nat’l Muffler Dealers Ass’n, Inc. v. United States, 440 U.S. 472, 480 n.10 (1979); Rome I, Ltd. v. Commissioner, 96 T.C. 697, 704 (1991). The Random House College Dictionary 1100 (rev. ed. 1980) defines the term “reasonable” as: (1) “agreeable to or in accord with reason or sound judgment; logical”; (2) “not exceeding the limit prescribed by reason; not excessive”; (3) “moderate in price; not expensive”; (4) “endowed with reason”; and (6) “capable of rational behavior, decision, etc.”. Webster’s II New Riverside University Dictionary 980 (1984) similarly defines the term as: (1) “[cjapable of reasoning”; (2) “[governed by or in accordance with reason or sound thinking”; (3) “[w]ithin the bounds of common sense”; and (4) “[n]ot extreme or excessive”. These definitions are not inconsistent with the use of the term “reasonable” elsewhere in the Code. The use of that term that is the most analogous to the current situation can be found in the phrase “reasonable basis” when referring to the standard of reporting. See, e.g., secs. 6662(d)(2)(B), 6676, 6694(a)(2)(B); see also 31 C.F.R. sec. 10.34(a) (2011) (setting forth the Circular 230 ethical standards regarding tax return preparation). Determining whether TEFRA applies to a particular partnership involves the application of the law (specifically, section 6231(a)(1)) to a set of facts (specifically, the information shown on the face of a partnership return). The reasonable basis standard of reporting involves the same type of inquiry. For that purpose, reasonable basis is defined as a relatively high standard of tax reporting, that is, significantly higher than not frivolous or not patently improper. The reasonable basis standard is not satisfied by a return position that is merely arguable or that is merely a colorable claim. If a return position is reasonably based on one or more of the authorities set forth in § 1.6662-4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in § 1.6662-4 (d)(2). * * * [Sec. 1.6662-3(b)(3), Income Tax Regs.] Against this backdrop, we analyze whether a determination based on the Stone Canyon partnership return that TEFRA does not apply to Stone Canyon would have been reasonable. Stone Canyon’s Form 1065 for 1999 contained conflicting and necessarily erroneous information. On one hand, Stone Canyon expressly reported that it was not subject to the TEFRA procedures by answering “no” to the question on line 4 of Schedule B, which asks: “Is this partnership subject to the consolidated audit procedures of sections 6221 through 6233? If ‘Yes,’ see Designation of Tax Matters Partner below”. Yet Stone Canyon designated a TMP. Notwithstanding these inconsistencies, the Schedules K-l that were included with and are part of the partnership return make it clear that the partnership must have been subject to TEFRA as a matter of law. One of the Schedules K-l listed an LLC as one of the members of Stone Canyon but then identified the LLC as an individual. Another Schedule K-l listed an S corporation as one of the members of Stone Canyon and identified it as an S corporation. The presence of any passthrough partner precludes the application of the small partnership exception of section 6231(a)(1)(B) and renders the partnership subject to TEFRA as a matter of law. Relying on the face of the partnership return, the only reasonable conclusion is that TEFRA applies to Stone Canyon. The Bedrosians even acknowledged this point in one of the memoranda that they filed before the Court raised the issue of section 6231(g)(2). They stated: “It was clear from the Stone Canyon Partners’ partnership returns that partners in Stone Canyon Partners were themselves pass-through entities. This makes Stone Canyon Partners subject to the TEFRA procedures automatically.” Memorandum of Points and Authorities in Support of Petitioners’ Motion for Summary Judgment, at 15 (Nov. 30, 2010). Because it would have been unreasonable to determine that TEFRA does not apply to Stone Canyon, we find that section 6231(g)(2) does not apply. IV. Law of the Case As discussed above, we conclude that no election was made under section 6223(e)(2) to opt out of the TEFRA proceedings regarding Stone Canyon. We also conclude that the IRS did not determine that TEFRA did not apply to Stone Canyon (and if it made such a determination, it would have been unreasonable). In addition to these reasons, we must rule against the Bedrosians because we are bound by what the Court of Appeals for the Ninth Circuit has already decided in this case. We previously held that we lack jurisdiction over the partnership items that were included in the notice of deficiency at issue here, which, in essence, the Bedrosians ask us to reconsider. But the Court of Appeals already agreed with this Court’s determination that the notice of deficiency was invalid as to the partnership items. As the Court of Appeals put it: “[T]he Tax Court never had jurisdiction over ‘such deficiency’ in the first place.” Bedrosian v. Commissioner, 358 Fed. Appx. at 870. The phrase “such deficiency” refers to the partnership items that the IRS included in the notice of deficiency; however, we still had jurisdiction over the nonpartnership items for 2000 (i.e., the transaction fees). As a result, the Court of Appeals dismissed the Bedrosians’ appeal from our decision in T.C. Memo. 2007-375 because “there is no final judgment as to all claims.” The Court of Appeals remanded the case for further proceedings concerning the taxable year 2000, and we received the mandate on February 1, 2010. The “law of the case” doctrine “posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.” Arizona v. California, 460 U.S. 605, 618 (1983). It has been recognized and repeatedly applied by this Court and by the Court of Appeals for the Ninth Circuit, see, e.g., United States v. Alexander, 106 F.3d 874 (9th Cir. 1997); Herrington v. Cnty. of Sonoma, 12 F.3d 901 (9th Cir. 1993); Pollei v. Commissioner, 94 T.C. 595 (1990); Dixon v. Commissioner, T.C. Memo. 2006-190, and precludes reconsideration of an issue that has been decided in this case, Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993). The issues that a lower court is precluded from reconsidering “include those that were decided by the appellate court expressly or by necessary implication.” Pollei v. Commissioner, 94 T.C. at 601 (citing In re Beverly Hills Bancorp, 752 F.2d 1334 (9th Cir.1984)). Following either the section 6223(e) approach advocated by the Bedrosians or the section 6231(g)(2) approach would require that we reconsider our prior opinion in T.C. Memo. 2007-375 wherein we held that we lack jurisdiction over the very same items over which the Bedrosians now ask us to find jurisdiction. Doing so would violate the law of the case. Following the section 6223(e) approach would have us find jurisdiction over the partnership items in the 2005 notice of deficiency; the Court of Appeals for the Ninth Circuit has already held that we do not have jurisdiction over those items. Following the section 6231(g)(2) approach would render the FPAA and the Stone Canyon Partners proceeding a nullity; the Court of Appeals already upheld the validity of the notice that underlay that proceeding and affirmed our decision in that case. The law of the case doctrine precludes us from reconsidering these rulings. It is worth noting that the Bedrosians raised their allegations regarding the IRS’ muddled handling of this case in the Stone Canyon Partners FPAA case. They alleged two affirmative defenses to the adjustments in the FPAA. The first defense was that the FPAA was invalid because it was not mailed to the last known address. Their second affirmative defense was as follows: The Commissioner failed to properly conduct a partnership-level proceeding * * * and issued a Notice of Deficiency proposing adjustments to partners’ returns less than one month after issuing the FPAA, in violation of law. As a result, even if the FPAA had been timely received, the premature issuance of the Notice of Deficiency proposing adjustments based on the FPAA would have misled the partnership and its partners into concluding that the procedures for obtaining judicial review of the Notice of Deficiency superseded and obviated the procedures for obtaining judicial review of the FPAA. Therefore, any purported adjustments made by Commissioner in the FPAA are of no force and effect * * *. In this passage, the Bedrosians clearly alleged that the IRS “failed to properly conduct a partnership-level proceeding”; that the FPAA was “of no force and effect”; that the notice of deficiency issued to them individually could reasonably be construed as the method the IRS had selected to resolve the 1999 partnership items; and that the notice of deficiency issued to them individually “superseded and obviated” the FPAA. Although the Bedrosians did not frame their argument using the terminology of section 6231(g)(2), their factual allegations are essentially the same factual allegations that they now advance to support their contention that this case should be governed by individual deficiency procedures. For whatever reason, the Bedrosians abandoned this theory and argued the last known address issue, which was rejected both by this Court and by the Court of Appeals for the Ninth Circuit. They cannot now collaterally attack what has become a final decision. Conclusion The Bedrosians cannot use this deficiency proceeding to make a collateral attack because of the final decision in Stone Canyon Partners or the opinion of the Court of Appeals in their prior appeal in this case. Their arguments regarding sections 6223(e) and 6231(g) amount to just that. Moreover, their arguments fail on the merits. The Bedrosians’ partnership items did not automatically convert under section 6231(e)(2), and they neither made an election under section 6223(e)(3) nor substantially complied with the procedures for making such an election. Regarding section 6231(g)(2), the IRS determined that TEFRA applied to Stone Canyon, as evidenced by the Stone Canyon FPAA. If the IRS had determined that TEFRA did not apply to Stone Canyon, that determination would not have been reasonable because Stone Canyon had passthrough partners, which preclude it from falling within the small partnership exception. To reflect the foregoing, An appropriate order will be issued. Reviewed by the Court. Halpern, Gale, Holmes, Kerrigan, Lauber, and Nega, JJ., agree with this opinion of the Court. Kroupa, J.,[13] concurs in the result only. Gustafson and Morrison, JJ., did not participate in the consideration of this opinion. All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. TEFRA is shorthand for the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, sec. 1(a), 96 Stat. at 324. Notwithstanding being included on the Form 2848, it appears from the record that Mr. Hodge did not have any involvement in the audit. See sec. 6229(b)(3); Ginsburg v. Commissioner, 127 T.C. 75 (2006). See Rhone-Poulenc Surfactants & Specialties L.P. v. Commissioner, 114 T.C. 533 (2000). Stone Canyon’s Form 1065 for 1999 was filed on October 16, 2000. The period described in sec. 6229(a) would have expired on October 16, 2003. It appears that Revenue Agent Smyth reviewed the Bedrosians’ Forms 1040 for 2001 and 2002 for the limited purpose of making carryover adjustments arising from the adjustments for 1999 and 2000. If, at the time the petition was filed, respondent believed that Stone Canyon was subject to the TEFRA procedures, he should not have waited almost a year to file a motion to dismiss for lack of jurisdiction. See Internal Revenue Manual (IRM) pt. 35.3.2.1(3) (Sept. 21, 2012) (“A jurisdictional defect should be raised in a motion to dismiss for lack of jurisdiction as soon as the jurisdictional defect is discovered and any evidence needed to support such a motion is acquired. Field attorneys should avoid waiting to raise such defects in the answer, stipulation or motion under T.C. Rule 122 in order to ensure a prompt resolution of the case and to avoid unnecessary work for the Tax Court.”). A similar provision was in effect at the time the petition was filed. At that time neither party raised, nor did we consider, the possible application of sec. 6223(e) or 6231(g). Notably, it appears that the Bedrosians’ position regarding sec. 6231(g) would, in effect, undermine their statute of limitations argument. The effect of sec. 6231(g)(2) is to render the whole of the TEFRA provisions inapplicable to the partnership at issue. As a result, sec. 6229(b)(3), the linchpin of the Bedrosians’ statute of limitations argument, would be inapplicable. Indeed, the unidentified partner rule may well apply to the Bedrosians in this case. The Bedrosians are not identified on the face of the partnership return, and there is nothing in the record to indicate that their identifying information was provided in accordance with the regulations under sec. 6223. See Taylor v. Commissioner, T.C. Memo. 1992-219. However, we need not decide this question. The current regulation clarifies that the FPAA is the operative notice, but that regulation became effective on October 4, 2001, for partnership years beginning after that date. See sec. 301.6223(e)-2(e), Proced. & Admin. Regs. A temporary regulation was effective for the partnership years at issue, and the IRS took the same position even before the final regulations. Field Service Advisory 1993, 1993 WL 1469668. The 33 months is calculated from the time the petition was filed in this Court with respect to the Stone Canyon FPAA until the date the amended petition was lodged.